IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| GATEWAY LUMBER CO., et al. (Gateway Lumber Co.), | ) | |
| Plaintiffs, | ) | Consolidated under lead case No. 87-435C (No. 87-435C) (Judge Bruggink) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
IN GATEWAY LUMBER CO. v. UNITED STATES, NO. 87-435C

Pursuant to Rule 56(a), we respectfully request that the Court enter partial summary judgment as to liability against Gateway Lumber Company ("Gateway") and in favor of the United States on its counterclaim in this case. Partial summary judgment is appropriate because no genuine issue as to any material fact exists regarding Gateway's breach of contract and the United States is entitled to judgment as a matter of law.[1] In support of this motion, we rely upon the pleadings, our accompanying proposed findings of uncontroverted fact, the Declaration of Christine Anderson, the documents reproduced in our appendix, and the following memorandum of law.

[1] Like Mt. Adams Veneer Co. v. United States, No. 91-984C, this is a no-resale case. In a June 22, 2004 Order in Mt. Adams, this Court concluded that, where the Forest Service chose not to resell, a trial was necessary to resolve factual issues surrounding the Forest Service's appraisal of the value of the timber remaining upon contract termination and the resulting determination of damages. Accordingly, our motion in this case seeks summary judgment as to liability only.

DEFENDANT'S MEMORANDUM OF LAW

Nature Of The Case

Plaintiff, Gateway Lumber Company ("Gateway"), challenges a contracting officer's final decision assessing damages against it as a result of the company's failure to perform the Eldred Creek Timber Sale contract. The United States counterclaims for the damages due under the terms of the contract.

Statement Of The Facts

A statement of the relevant facts is set forth in our accompanying proposed findings of uncontroverted fact.

Argument

I. Summary Judgment Is Appropriate

Summary judgment is appropriate where, as here, no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Rule 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390 (Fed. Cir. 1987). Summary judgment is properly regarded not as a disfavored procedural shortcut, but as "a salutary method of disposition 'designed to secure the just, speedy, and inexpensive determination of every action.'" Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)).

A "material" fact is one which "might affect the outcome of the suit under the governing law" and a dispute as to a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S.

at 248; Sweats Fashions, 833 F.2d at 1562. Moreover, as the Federal Circuit emphasized in Sweats Fashions, "the burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact." 833 F.2d at 1563 (emphasis in original). Rather, "'the burden on the moving party may be discharged by 'showing' – that is, pointing out to the [court] – that there is an absence of evidence to support the non-moving party's case.'" Id. (emphasis in original) (quoting Celotex, 477 U.S. at 325).

In this case, partial summary judgment in favor of the United States is appropriate because no genuine issue as to any material fact exists regarding Gateway's breach, and the United States is entitled, as a matter of law, to a judgment as to Gateway's liability.

II. Gateway's Failure to Perform Constitutes a Breach of Contract; Gateway's Breach Is Unexcused as a Matter of Law.

Under the terms of the Eldred Creek timber sale contract, Gateway was obligated to cut, remove, and pay for all of the timber included in the sale by the contract termination date (as extended). Gateway failed to do so. DPFUF ¶ 5-11;[2] D. App. 12-24. Gateway's failure to perform constitutes a material breach of contract. Capital Development Co. v. United States, 49 Fed. Cl. 178 (2001), aff'd sub nom. Seaboard Lumber Co. v. United States, 308 F.3d 1283 (Fed. Cir. 2002); Seaboard Lumber Co. v. United States, 48 Fed. Cl. 814 (2001), aff'd 308 F.3d 1283 (Fed. Cir. 2002).

Gateway asserts that its non-performance is excused, alternatively, under the doctrines of commercial impracticability, impossibility, and frustration of purpose. See Gateway's

[2] "DPFUF ¶ __" refers to the cited paragraph(s) in our accompanying proposed findings of uncontroverted fact. Our proposed findings contain citations to documentary evidence reproduced in our appendix and to the testimony of Christine Anderson set forth in her Declaration filed with our motion.

Complaint ¶ 5. These defenses, as well as other liability defenses, have been rejected by both this Court and the Federal Circuit in prior litigation in these consolidated cases. Seaboard Lumber Co. v. United States, 41 Fed. Cl. 401, 405 (1998) ("The undisputed facts demand the conclusion that none of the plaintiffs' breaches are excused due to the contract doctrines of impossibility of performance, commercial impracticability, or frustration of purpose. Nor were the circumstances such that the 'force majeure' clause found in the contracts would excuse non-performance."), aff'd 308 F.3d 1283 (Fed. Cir. 2002).

If Gateway has any additional affirmative defense or defenses, Gateway must raise them in its response to our motion. Further, to avoid summary judgment as to liability, Gateway must produce sufficient evidence to create a genuine issue as to some material fact. If Gateway fails to do so, summary judgment in favor of the United States is appropriate.

Conclusion

For the foregoing reasons, the United States respectfully requests that the Court grant its motion for partial summary judgment and enter an appropriate order ruling that Gateway's breach of the Eldred Creek contact is unexcused.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

J. CHRISTOPHER KOHN
Director

s/John W. Showalter
JOHN W. SHOWALTER
Assistant Director

s/Richard P. Nockett
RICHARD P. NOCKETT
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W. (8th Floor)
Washington, D.C. 20530
Tele: (202) 307-1134
Fax: (202) 307-0494

Attorneys for Defendant

Dated: December 22, 2005

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this __23d__ day of December 2005 I caused copies of the foregoing "DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN GATEWAY LUMBER CO. v. UNITED STATES, No. 87-435C," and the accompanying "APPENDIX TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT," and the "DECLARATION OF CHRISTINE ANDERSON" to be served upon the following individuals by United States mail (first-class, postage prepaid):

DENNIS J. DUNPHY, Esq.
Schwabe, Williamson & Wyatt
1420 Fifth Avenue, Suite 3010
Seattle, Washington 98101-2393

______________________________

APPENDIX TO

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

IN GATEWAY LUMBER CO. v. UNITED STATES, NO. 87-435C

# INDEX TO APPENDIX


| Document | Page |
|---|---|
| Forest Service Advertisement for the Eldred Creek Sale | 1 |
| Prospectus for the Eldred Creek Sale | 2-9 |
| Forest Service "APPRAISAL SUMMARY" dated January 22, 1979, for the original Eldred Creek Sale | 10 |
| Forest Service "REPORT OF TIMBER SALE" dated March 14, 1979, for the original Eldred Creek Sale | 11 |
| Excerpts from Gateway's Eldred Creek Timber Sale Contract | 12-14 |
| May 3, 1982 letter to Gateway adjusting contract termination date | 15-16 |
| May 20, 1983 letter to Gateway adjusting contract termination date | 17 |
| "AGREEMENT TO MODIFY CONTRACT" dated August 16, 1983 | 18 |
| "AGREEMENT TO EXTEND AND MODIFY TIMBER SALE CONTRACT, dated September 20, 1983 | 19-22 |
| December 19, 1985 letter to Gateway confirming North Side extension | 23 |
| April 18, 1986 letter to Gateway advising of contract termination | 24 |
| April 9, 1986 Forest Service memorandum confirming decision not to resell | 25 |
| Standard Provision B9.4 of Timber Sale Contract | 26 |
| Eldred Creek Damage Appraisal excerpts, including "APPRAISAL SUMMARY". | 27-29 |
| Contracting Officer's final decision letter dated August 13, 1986 | 30-31 |
| Bill for Collection, dated August 6, 1986 | 32 |

MONTE CRISTO R.D.
ELDRED CREEK T.S.

AD APPEARING IN THE EVERETT HERALD, FEBRUARY 12, 1979.

NATIONAL FOREST TIMBER FOR SALE, MT BAKER-SNOQUALMIE NATIONAL FOREST. ELDRED CREEK SALE, located within T. 30 N., R. 9 E., W.M., surveyed. SEALED BIDS will be received by the District Ranger or his representative at the Verlot Ranger Station, up to and not later than 11:00 AM, local time at place of bid opening, March 14, 1979 followed immediately by oral bidding for an estimated 5000 M board feet of timber marked or otherwise designated for cutting. The minimum acceptable bid per M board feet is: Western Hemlock and Other Coniferous Species, $126.30; All Species Cedar, $258.78. In addition, there is within the sale area an estimated 200 M board feet of Douglas-fir logs which will be paid for at $250.08 per M board feet. Additional deposit required for slash disposal is $6.38 per M board feet for all species. In addition there is within the sale area an estimated 109 acres of all species logs subject to per acre pricing which will be paid for at $1.83 per acre. Additional deposit required for road maintenance on National Forest roads over the appraised route is $.13 per M board feet for all species logs priced per M board feet. The contract includes a description of the maintenance work and a breakdown of the per M board foot deposit on a per M board foot per mile basis by roads. In the event that total bid value plus required deposits for this contract exceed one million dollars ($1,000,000) an EEO compliance review will be conducted on the high bidder to determine if the provisions of Executive Order 11246 have been complied with before award can be made. All included Timber, except that not meeting Utilization Standards, is subject to Timber Export and Substitution Restrictions. Bidders are advised that violations of the Timber Export and Substitution Restrictions constitute breach of contract and may result in contract cancellation, refusal to award other timber sales to the violator, and/or debarment or suspension from bidding on future timber sales. The required bid guarantee is $41,000.00. In accordance with the National Forest Management Act of 1976, a bidder qualifying as a small business under the Small Business Act (as amended and the regulations issued thereunder) may elect at the time of sealed bid submission to have Forest Service construct the included Specified Roads. If the bidder so elects, the price paid for the timber shall include the estimated construction cost which is $228,769.00. Such road will be constructed to the design standards and in accordance with drawings and specifications included in the sample contract. Specified Roads, whether constructed by Purchaser or Forest Service, shall be completed by October 31, 1980. If the bidder elects to have Forest Service construct the roads, Forest Service intends to perform construction by contract. When Forest Service intends to construct the road through a contract, the award of the timber sale will not be made unless either a satisfactory road construction bid is received, or if Forest Service fails to receive such a bid within 150 days of finding the bidder's offer to be acceptable, bidder agrees to perform road construction. Applicable Purchaser's Road Credits are $205,420.00. The right to reject any and all bids is reserved. A prospectus and information concerning the timber, the conditions of sale and submission of bids should be obtained from the District Ranger, Verlot Ranger Station, Granite Falls WA 98252 or the Forest Supervisor, 1601 Second AV Building, Seattle WA 98101.

1

## TIMBER SALE PROSPECTUS

ELDRED CREEK
Timber Sale

MT Baker-Snoqualmie National Fore

| Unit or Compartment | Working Circle | District |
|---|---|---|
| GORDON | MT Baker | MONTE CRISTO |

1. INTRODUCTION. This prospectus is to furnish sufficient information in addition to that contained in the published advertisement to enable prospe tive bidders to decide whether further investigation of the sale is warran INFORMATION GIVEN HERE OR OTHERWISE PROVIDED IS NOT A PART OF THE CONTRACT UNLESS STATED THEREIN. DETAILED CONDITIONS OF SALE ARE CONTAINED IN THE SAMPLE TIMBER SALE CONTRACT. IN THE EVENT A CONTRADICTION EXISTS BETWEEN THIS PROSPECTUS AND THE SAMPLE CONTRACT THE CONTRACT GOVERNS. Timber Sale Contract, Form 2400- 6, will be used. Sale sample contract shou be inspected before submitting a bid. The appraisal, and other informatio on the timber, conditions of sale and bidding may be obtained at Forest Se offices named in the attached advertisement.

2. BIDDING. Sealed bids will be received at the Forest Service offices named in the advertisement followed immediately by oral bidding . Bids mus be submitted on prepared forms which may be obtained from the Forest Servic offices named in the advertisement. These forms include instructions for both sealed and oral auction bids as well as for submission of the bid guarantee.

3. LOCATION AND AREA. Refer to the attached sale area map and to the samp contract for legal subdivisions and location of cutting area, acreage of sale, acreage to be cut, etc. THE FOLLOWING GENERAL LOCATION, ROUTES OF ACCESS, ACREAGES AND OTHER SPECIAL LOCATION DATA DO NOT SUPERSEDE SALE AREA MAP OR SAMPLE CONTRACT.

The sale is located in Sections 23, 24, T.30N., R.9E., W.M.; approximately 9 miles east of the Verlot Ranger Station. The haul routes are via Forest Ser Roads 3055, 3055A, 3055B, 3055Z, 4045 and the Mountain Loop Highway. There are two clearcut units containing 107 acres. In addition there are 2 acres of specified road right-of-way outside the unit boundaries for a total of 10 acres. Harvest is by skyline, highlead, tractor and mobile-yarding systems.

4. VOLUME AND DESCRIPTION OF TIMBER. The quality, size and age class of the timber are estimates based on detailed cruise information on file and available for inspection at the Forest Service offices listed in the advertisement. INFORMATION LISTED HEREIN IS MADE AVAILABLE WITH THE UNDERSTANDING THAT VALUES SHOWN ARE NOT ESTIMATES OF A PURCHASER'S OWN RECOVERY AND ARE NOT A PART OF THE TIMBER SALE CONTRACT. For these reasons bidders are urged to examine the timber sale area and make their own recovery estimates.



2

Forest Service field estimate of sale volume and log quality in percent of volume by species is:

| Species | Estimated Volume and Unit of Measure | Log Grades % | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | 1P | 2P | 3P-SP | P | 1S | 2S | 3S | |
| | M BOARD FEET | | | | | | | | |
| Douglas-fir | 200 | 13 | 21 | 24 | | 9 | 27 | 6 | |
| All Species Cedar | 1300 | | | | | 26 | 40 | 34 | |
| Western Hemlock and Other Coniferous Species | 3700 | | | | 7 | 6 | 58 | 29 | |

Total sale area is about 138 acres.

Approximate age 200+ years.
Avg. Volume per tree. . . . GROSS. . . . . . . . 1.009 M bd. ft.
Avg. Diameter of Stand. . . . . . . . . . . . . 26 Inches

Estimate of Stand Defect. . . . . . . . . . . . 18 Percent

Total number of dead trees to be felled in sale area 662

In addition, an estimated 109 acres of all species logs, subject to per acre pricing are included within the sale area.

3

5. RATES. See attached bid form.

THE MINIMUM ACCEPTABLE BID RATE IS STATED IN THE ATTACHED ADVERTISEMENT AND IS THE ADVERTISED RATE SHOWN ON THE ATTACHED BID FORM. It is based upon pricing procedures provided by the Timber Sale Contract, Form 2400-6. This rate has been established by appraisal as though roads specified by the contract are in place. Applicable purchaser credit up to the amount shown in the advertisement will be credited to purchaser's timber sale account as specified roads are constructed and accepted. Required deposits for road maintenance and slash disposal are stated in the advertisement.

Rate redetermination date None.

Estimated Knutson-Vandenberg deposit for sale-area-betterment work in a total amount of $42,829.00 is included in total timber value.

SEE SAMPLE CONTRACT FOR EXPLANATION OF TERMS AND APPLICATION OF RATES.

6. PERIOD OF CONTRACT. The normal operating season shall be considered to be between JUNE 1 and OCTOBER 31. Contract termination date is MARCH 31, 1983. A general operation plan showing how the purchaser plans to complete sale by the termination date must be approved by Forest Service before operations may begin.

The Forest Service implemented a new extension policy on July 1, 1978. That policy applies to this contract. The most important provision of that policy is that extensions will normally not be granted unless:

(1) Specified roads needed by the Purchaser for removal of all included timber in accordance with his approved plan of operations were constructed and accepted by the Forest Service prior to the applicable road completion date. (Not applicable when Forest Service assumes responsibility for construction of roads).

(2) At least 75 percent of the advertised volume has been cut and removed from the sale area.

(3) Operations to date have been in reasonable compliance with contract terms and the approved plan of operations.

(4) Contractural requirements, such as snag felling, erosion control, and slash disposal, have been accepted on the area cutover, except for areas where logging is currently in progress. Purchaser's burning of current slash or grass seeding of disturbed areas may be waived as a prerequisite for extension, if weather conditions or other factors have delayed these activities.

7. PAYMENTS. —Payment for timber and related charges will be required in advance of cutting unless purchaser credit is established under or transferred to this contract, or acceptable payment guarantee is provided to permit cutting in advance of payments. Advance payments which the purchaser will be required to make shall be in such amounts as to cover the value of timber estimated to be cut in not less than 30 days and not more than 60 days at the applicable rates for timber and other related charges. Payment requests shall consider the operating plan and past performance of the purchaser. Deposits for cooperative scaling services must be made in advance of furnishing the services.

Purchaser credit established under or transferred into this sale may only be applied to timber charges in excess of timber value at base rates. The amount which may be transferred into this sale will be calculated as of the date of award.

Effective Purchaser Credit transferred from this sale which later turns out to be ineffective under this contract must be replaced with cash.

If a qualified bidder elects to have Forest Service construct Specified Roads, the contract will provide for collection of not less than the full estimated cost of the roads stated in the advertisement in addition to Base Rate Value and Required Deposits. For scaled sales the cost will be collected as timber is scaled, at a rate accelerated on 80 percent of the estimated volume. Cash deposits will be required when payments for stumpage include less value above Base Rates than is needed to meet the collection schedule.

If bidder elects the road option, payment for right-of-way timber subdivisions will be made in accordance with B4.0 payments.

8. PERFORMANCE BOND. A performance bond will be required. The penal sum of the bond will be 10 percent of the total bid value of the sale rounded up to the nearest $100 when the total bid value is $10,000 or less, and rounded up to the nearest $1000 when the total bid value exceeds $10,000. The maximum bond will be $ 200,000.00. The minimum bond will not be lower than $ 86,000.00.

Purchaser may request a revision in contract language to authorize deferment of payment for timber felled, but not removed, up to the penal sum of the performance bond and to increase the penal sum of the performance bond.

9. SPECIFIED ROADS. See sample contract for verification of specific details and information concerning construction specifications. CONSTRUCTION ESTIMATES ARE NOT GUARANTEED AND INFORMATION CONTAINED HEREIN, TOGETHER WITH RELATED MATERIAL, IS MADE AVAILABLE WITH THE UNDERSTANDING THAT COSTS OR QUANTITIES SHOWN ARE ESTIMATES. The following roads are those which Forest Service considers necessary to remove the timber from this sale.

| Road Number | Name | Design Class | Approximate Length (Miles) | Purchaser Credit Limit | Completion Date |
|---|---|---|---|---|---|
| RECONSTRUCTION | | | | | |
| 3055 | ELDRED CREEK | S-10 | 1.14 | | |
| CONSTRUCTION | | | | $110,580.00 | Oct. 31, 1980 |
| 3055 | ELDRED CREEK | S-10 | 0.27 | | |
| 3055A | ELDRED CREEK | S-10 | 0.25 | $ 24,490.00 | Oct. 31, 1980 |
| 3055B | ELDRED CREEK | S-10 | 0.13 | $ 21,970.00 | Oct. 31, 1980 |
| 3055Z | ELDRED CREEK | S-10 | 0.09 | $ 9,560.00 | Oct. 31, 1980 |
| 4045 | MARTEN CREEK | S-10 | 0.34 | $ 22,760.00 | Oct. 31, 1980 |
| PAY ITEMS COMMON TO ALL ROADS | | | | $ 16,060.00 | |

Total applicable Purchaser Road Credits are $ 205,420.00
(Only show amounts allowed for construction or reconstruction of roads in A10)

Total estimated construction cost is $ 228,769.00

Additional Purchaser Credit (See Item - Other) $ None

PURCHASER MUST STAKE ROAD NUMBERS 3055, 3055A, 3055B, 3055Z, 4045

6

10. INAPPLICABLE STANDARD PROVISIONS. See sample contract.

11. SPECIAL PROVISIONS. See sample contract.

12. FINANCIAL ASSISTANCE. The Small Business Administration (SBA) may be able to assist small business concerns finance construction of Specified Roads listed in the sample timber sale contract. SBA assistance, if available, may be in the form of guaranteed bank loans or direct participation SBA loans. Applicants must meet SBA size and eligibility requirements. APPLICANTS ALSO MUST MEET CREDIT REQUIREMENTS OF SBA AND/OR A LOCAL BANK. APPROVAL OF LOAN ASSISTANCE RESTS WITH SBA AND IS CONTINGENT ON AVAILABILITY OF LOCAL OR SBA FUNDS. FAILURE TO BE ELIGIBLE OR TO OBTAIN A LOAN WILL IN NO WAY AFFECT REQUIREMENTS OF BID FOR ADVERTISED TIMBER OR TIMBER SALE CONTRACT.

13. LOG EXPORT AND SUBSTITUTION RESTRICTION. The contract prohibits, except as specifically exempted, the export of unprocessed timber or the use of such timber in substitution for timber exported from private lands. Timber determined pursuant to public hearing to be surplus and timber not meeting utilization standards are exempt from these requirements.

Unprocessed timber is defined as (a) any logs of species, quantities, or grades which have not been found surplus to domestic needs meeting utilization standards and with a net scale content not less than 33 1/3 percent of the gross volume in material meeting the peeler or sawmill grade requirements published in the July 1, 1972, official Log Scaling and Grading Rules used by West Coast Log Scaling and Grading Bureaus; (b) cants to be subsequently remanufactured exceeding 8 3/4 inches in thickness; (c) cants of any thickness reassembled into logs; and (d) split or round bolts, or other roundwood not processed to standards and specifications suitable for end-product use (in Alaska add: and (e) chips not manufactured from logging or milling waste).

Substitution is defined as the purchase of timber from National Forest System lands to be used as replacement for timber exported from private lands. Such replacement occurs when with respect to historic levels, (1) the purchaser continues to export and increases his purchase of National Forest timber or (2) the purchase of National Forest timber continues while the purchaser increases his export of unprocessed timber from private lands tributary to the plant for which National Forest timber covered by a specific contract is expected to be delivered. Historic level is defined as the purchase or export during 1974 or any subsequent calendar year of not to exceed 110 percent of the average volume purchased or exported in calendar years 1971, 1972 and 1973.

Unless agreed in writing otherwise, (1) all products from the sale area shall be hammer branded on both ends with an assigned brand, (2) each product exempt from export restrictions shall also be hammer branded on both ends with an exempt brand registered for use on exempt logs from National Forest timber sales, and (3) all nonexempt products shall be painted on one end with highway yellow paint. Exempt products shall carry no yellow paint.

For his bid to be considered, bidder must submit therewith a certification that purchase of the timber will not constitute substitution, agree to furnish Forest Service with the names and locations of the manufacturing plants in which the timber is to be manufactured, and agree to make his records as to origin and disposition of export of private timber available to the Forest Service upon request.

Bidders are advised that false certification or violation of the export and substitution requirements may result in cancellation of the contract, refusal to award other timber sales, and/or debarment or suspension from bidding on timber sales.

14. EQUAL EMPLOYMENT OPPORTUNITY COMPLIANCE REVIEW. In the event that total bid value plus required deposits for this contract exceeds one million dollars ($1,000,000) an EEO compliance review will be conducted on the high bidder to determine if the provisions of Executive Order 11246 have been complied with before award can be made.

15. OTHER.

a. Bidders will not be permitted to change their road option election after the time for opening bids. Election must be made prior to bid opening.

b. Rock pit or quarry operations are under the jurisdiction of the Mine Safety and Health Administration - MSHA. The law and regulations require pit and quarry operators to notify the applicable MSHA office prior to the start, and at the termination of operations, in a material source.

c. The estimated costs for Bureau scaling include all costs, including volume summaries to be supplied to the Forest Service.

d. Purchaser will construct machine firelines.

e. Logs are to be lifted entirely free of the ground before yarding across the protected streams in the skyline portions of units 1 and 2.

f. Logging: This sale consists of 2 clearcut subdivisions totalling 109 acres including road right-of-way. The estimated volume is 5200 M board feet. The sale was appraised for 67 acres of skyline, 8 acres of tractor, 6 acres mobile yarding and 28 acres of highlead. A skyline feasibility report was prepared and is available for review at the Verlot Ranger Station.

g. Purchaser to protect water supply as shown on sale area map, B6.22, B2.31, C6.41.

h. In accordance with special provision C6.6#, the Purchaser may elect to make cooperative deposits to the Forest Service to seed and fertilize landings, firelines and temporary roads.

i. Purchaser operations will be limited from June 1 to October 31 for subdivision 1 and 3, C6.311.

j. Road Option. A bidder qualifying as a small business concern may elect to have Forest Service construct Specified Roads listed above (Item 9). Completion dates for construction shall apply whether construction is

performed by Purchaser or Forest Service. If bidder elects Forest Service construction, such construction will be through contracts and award will be delayed until a satisfactory road construction bid is received, or, if Forest Service fails to receive such a bid within 150 days of finding bidder's offer to be acceptable, bidder agrees to perform road construction.

# APPRAISAL SUMMARY

SALE NAME: ELDRED CREEK SUMMARY CHECKED BY: DATE: 01/22/79

- - - - - - - - - - - - - - - - CARD TYPE 5 - - - - - - - - - - - - - - - -

SPECIFIED RD CONST (MILES) 1.1 (14-16) RECONSTRUCTION (MILES) 1.1 (17-19) PURCH CR LIM $205420. (20-26) (INC. $ 28639. P&R **)

PRODUCT: APPRAISED TO: HAUL MILES: 37 (30-32) TEMP RD CONSTR (MILES) 1 (27-29) TEMP RD COST $ 7255.

1 EVERETT WASH

4 EVERETT WASH

0

BASIC DATA PERIOD: C.Y.1977 ADJ TO (APPRAISAL BASE PERIOD): 4TH QTR 1978 ALL SPECIES

------------------------ CARD TYPE 6 ------------------------ UNIT OF MEASURE

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| PRODUCT/UNIT | 14-15 | 1 1 | 1 1 | 1 1 | 4-1 | | 1 33 | |
| SPECIES | | D | C | H&O | PAM* | | TOTAL OR AVERAGE | |
| SPECIES CODE | 16-18 | 205 | 242 | 263 | 002 | | | |
| % BY SPECIES | | 3.57% | 23.21% | 66.07% | 7.14% | T | 100.00% | |
| VOLUME | 19-25 | 200 | 1300 | 3700 | 400 | T | 5600 | 34-40 |
| SELLING VALUE | | 476.61 | 524.28 | 276.31 | 207.84 | A | 336.14 | |
| SV ADJ SCHED 12/78 | | 1.188 | 1.000 | 1.213 | | | | |
| ADJ SELLING VALUE | | 566.21 | 524.28 | 335.16 | 207.84 | | | |
| CHIP & BYPRODUCTS | | 35.70 | 0.00 | 38.80 | 0.00 | | | |
| SELLING VALUE L.S. | 26-30 | 601.91 | 524.28 | 373.96 | 207.84 | A | 405.13 | |
| FALLING & BUCKING | | 7.80 | 7.80 | 7.80 | 2.55 | A | 7.43 | 41-44 |
| SKIDDING & LOADING | | 30.35 | 30.35 | 30.35 | 22.77 | A | 29.81 | 45-48 |
| SUBTOTAL, STUMP-TO-TRUCK | | 38.15 | 38.15 | 38.15 | 25.32 | | | |
| HAUL AND SCALE | | 13.12 | 13.12 | 13.12 | 11.79 | A | 13.03 | 49-52 |
| ROAD MAINTENANCE CO OP .13 | | 0.30 | 0.30 | 0.30 | 0.00 | A | .28 | 53-56 |
| SUBTOTAL, TRANSPORTATION | | 13.42 | 13.42 | 13.42 | 11.79 | | | |
| GENERAL LOGGING OVERHEAD & DEPREC | | 17.72 | 17.72 | 17.72 | 15.33 | A | 17.55 | 57-60 |
| (DEPRECIATION INCLUDED IN LINE 18) | | ( 8.79) | ( 8.79) | ( 8.79) | ( 7.87) | | | |
| SUBTOTAL, ADMINISTRATIVE | | 17.72 | 17.72 | 17.72 | 15.33 | | | |
| SLASH DISPOSAL (INC. 6.38 CO-OP) | | 7.63 | 7.63 | 7.63 | 0.00 | A | 7.09 | 61-64 |
| EROSION CONTROL | | 0.98 | 0.98 | 0.98 | 0.00 | A | .91 | 65-68 |
| SNAG DISPOSAL | | 0.00 | 0.00 | 0.00 | 0.00 | A | .00 | 69-72 |
| FIRE PROTECTION | | 0.28 | 0.28 | 0.28 | 0.25 | A | .28 | 73-76 |
| SUBTOTAL, ENVIRONMENTAL PROTECTION | | 8.89 | 8.89 | 8.89 | 0.25 | | | |
| TEMPORARY ROADS & OTHER TEMP DEVPMTS | | 1.40 | 1.40 | 1.40 | 0.00 | A | 1.30 | 77-80 |
| (OTHER TEMPORARY DEVELOPMENTS) | | ( 0.00) | ( 0.00) | ( 0.00) | ( 0.00) | A | ( .00) | |
| SUBTOTAL, TEMPORARY DEVELOPMENT | | 1.40 | 1.40 | 1.40 | 0.00 | | | |
| SUBTOTAL, LOGGING COSTS | 31-35 | 79.58 | 79.58 | 79.58 | 52.69 | A | 77.68 | |
| SPECIFIED ROAD COST (A10) | | 39.50 | 39.50 | 39.50 | 0.00 | A | 36.68 | |
| TOTAL LOGGING COST L.S. | | 119.08 | 119.08 | 119.08 | 52.69 | A | 114.36 | |
| MFG. COST L.S. | | 190.70 | 126.29 | 119.58 | 126.29 | A | 124.16 | |
| PRODUCT HAUL | | 0.00 | 0.00 | 0.00 | 0.00 | A | .00 | |
| MFG. COST L.S. | 36-40 | 190.70 | 126.29 | 119.58 | 126.29 | A | 124.16 | |
| TOTAL PRODUCTION COST L.S. | | 309.78 | 245.37 | 238.66 | 178.98 | A | 238.52 | |
| CONVERSION (10)-(35) | | 292.13 | 278.91 | 135.30 | 28.86 | A | 166.61 | |
| P&R RATIO % NORMAL/ADVERTISED | | 17.00 | 14.00 | 17.00 | 15.80 | N | 16.2/ADV | 16.2 ** |
| P&R MARGIN NORMAL/ADVERTISED | | 81.55 | 59.63 | 48.50 | 28.36 | N | 55.93/ADV | 55.93 ** |
| INDICATED NET STUMPAGE (36)-(38) | | 210.58 | 219.28 | 86.80 | 0.50 | A | 115.81 | |
| INDICATED ADVERTISED RATES (39)+(30) | | 250.08 | 258.78 | 126.30 | 0.50 | T | 853940.00 | |
| | | | | | | A | 152.49 | |
| BASE RATES | | 9.62 | 8.62 | 8.62 | 0.50 | A | 8.08 | |
| ADJUSTMENTS TO BASE RATES | | 0.00 | 0.00 | 0.00 | 0.00 | A | .00 | |
| ADVERTISED RATES (40)+(42) | | 250.08 | 258.78 | 126.30 | 0.50 | T | 853940.00 | |
| | | | | | | A | 152.49 | |
| INDICATED STAT NET RATES(43)-(30) | 41-45 | 210.58 | 219.28 | 86.80 | 0.50 | A | 115.81 | |
| APPRASIED NET RATES | 46-50 | 210.58 | 219.28 | 86.80 | 0.50 | A | 115.81 | |
| BASE INDICES | | 0.00 | 0.00 | 0.00 | 0.00 | | | |

PAM* ACTUALLY APPRAISED AT $ 1.83/ACRE FOR 109 ACRES.

10

USDA • FOREST SERVICE

# REPORT OF TIMBER SALE
CONVERTIBLE AND NONCONVERTIBLE PRODUCTS
(REF. FSM 2490)

| | | | |
|---|---|---|---|
| REGION 06 | FOREST MT Baker-Snoq. 05 | DISTRICT (OR AREA) Monte Cristo 04 | SALE NUMBER 014 |
| STATE 53 | COUNTY 061 | SALE NAME ELDRED CREEK | QTR.-CY 1-79 |
| ACRES IN SALE 138 | SIZE CLASS 7 | LEGAL DISCRIPTION S23,24T30NR9EWM | COMPARTMENT 4501 |
| BID DATE 03/14/79 | STATUS 4 | SBA SET-ASIDE N | APP. BASE PERIOD 4-7 8 |
| SALVAGE N | PRICING METHOD 1 | PLAN'D SAB COL $ 42,829.00 | TERM. DATE 03/31/83 |
| CONT. NO. 062090 | CONTRACT FORM 2400 6 | CONTRACTING OFFICER S | METHOD OF SALE A |
| | | ZONE 2 | CONTRACT DATE 01/24/80 |
| | | REG. 36CFR221 6 | |

| SPECIES | SPEC. CODE | PROD. UNIT | VOLUME | ADVERTISED RATES $ | STAT. HIGH BID $ | HIGH BIDDER $ | 2ND HIGH BIDDER $ | 3RD HIGH BIDDER $ | 4TH HIGH BIDDER $ | 5TH HIGH BIDDER $ | 6TH HIGH BIDDER $ | 7TH HIGH BIDDER $ | 8TH HIGH BIDDER $ | 9TH HIGH BIDDER $ | 10TH HIGH BIDDER $ | 11TH HIGH BIDDER $ | 12TH HIGH BIDDER $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| D | 205 | 1-1 | 200 | 250.08 | 210.58 | 250.08 | 250.08 | 250.08 | 250.08 | 250.08 | 250.08 | 250.08 | 250.08 | | | | |
| C | 242 | 1-1 | 1300 | 258.78 | 370.50 | 410.00 | 390.00 | 393.00 | 360.00 | 260.00 | 258.78 | 258.78 | 258.78 | | | | |
| H&O | 263 | 1-1 | 3700 | 126.30 | 190.50 | 230.00 | 235.00 | 188.00 | 165.25 | 127.00 | 126.30 | 126.30 | 126.30 | | | | |
| *PAM | 002 | 4-1 | 400 | .50 | .50 | .50 | .50 | .50 | .50 | .50 | .50 | .50 | .50 | | | | |
| TOTAL/AVER. | | 1 | 5600 | 152.49 | 219.43 | 256.11 | | | | | | | | | | | |

AWARD WITHHELD PENDING ROAD OPTION, FINANCIAL STATEMENT AND EEO COMPLIANCE REVIEW.

## SUMMARY OF BIDDERS

| RANK | NAME | SBA CLASS | IDENTIFICATION NUMBER | TOTAL VALUE OF BID |
|---|---|---|---|---|
| HIGH 1 | Gateway Lumber Co. | S | | $1,434,216.00 |
| 2 | Buse Timber & Sales, Inc. | S | | $1,426,716.00 |
| 3 | Miller Shingle Co., Inc. | S | | $1,256,716.00 |
| 4 | Pugsley Cedar Prod., Inc. | S | | $1,129,641.00 |
| 5 | Roesler Ind. Dist. Co. | S | | $ 858,116.00 |
| 6 | Wm. R. Pearson Tbr., Inc. | S | | $ 853,940.00 |
| 7 | Mt. Baker Plywood | S | | $ 853,940.00 |
| 8 | Welco Lumber Co. | S | | $ 853,940.00 |
| 9 | | | | |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |

I certify that I have personally examined the Bids submitted for this sale and that this is an accurate record thereof.

Signature [signature]

TITLE Logging Systems Specialist DATE 3/14/79

REMARKS

| | 1P | 2P | 3P-SP | P | 1S | 2S | 3S |
|---|---|---|---|---|---|---|---|
| D | 13 | 21 | 24 | | 9 | 27 | 6 |
| C | | | | | 26 | 40 | 34 |
| H&O | | | | 7 | 6 | 58 | 29 |

2420
2450
DJC
SBA
FRANZ

*PAM sold at the rate of $1.83 PER-ACRE for 109 acres. Per M figures for Statistical purposes only.

DISTRIBUTION: Orig. and 1cc to RO (orig. to WO), 1cc to RO of SBA

2400-17 (5/73)

ORIGINAL
Forest Service

| U.S. DEPARTMENT OF AGRICULTURE - FOREST SERVICE<br>**TIMBER SALE CONTRACT**<br>(Applicable to Sales to be Scaled After Felling) | | NAME OF PURCHASER<br>GATEWAY LUMBER COMPANY<br>19023 47th AV NE<br>ARLINGTON WA 98223 | |
|---|---|---|---|
| NATIONAL FOREST<br>MT BAKER-SNOQUALMIE | RANGER DISTRICT<br>MONTE CRISTO | REGION<br>6 | CONTRACT NO.<br>062090 |
| SALE NAME<br>ELDRED CREEK | | SUBREGION<br>Douglas-fir | AWARD DATE<br>11-19-79 / TERMINATION DATE<br>March 31,1983 |

The parties to this contract are The United States of America, acting through the Forest Service, United States Department of Agriculture, hereinafter called Forest Service, and Gateway Lumber Company, 19023 47th AV NE,

[1] Arlington WA 98223,

a corporation organized and existing under the laws of the State of Washington,

hereinafter called Purchaser.

[2] Forest Service having advertised a sale at which either (1) Purchaser, whose required bid deposit is now held by Forest Service as an initial deposit, was the successful bidder, or (2) no bids were received and Purchaser having subsequently offered at least the minimum advertised price and made an initial deposit in the same amount as the bid deposit specified in the sale advertisement; and the parties hereto desiring to record their agreement; now, therefore,

In consideration of the premises and the promises hereinafter contained, unless provided otherwise herein, Forest Service agrees to sell and permit Purchaser to cut and remove and Purchaser agrees to purchase, cut and remove Included Timber.

This contract consists of three Divisions: A - Specific Conditions, B - Standard Provisions, and C - Special Provisions, together with Sale Area Map, Drawings and specifications for developments (if any) and such attachments as may be provided for in Division C. Specific Conditions are numbered and apply to the Part, Section, Subsection, or Item of the Standard Provisions, as indicated hereunder. Other conditions of this contract are stated in Division C - Special Provisions.

IN WITNESS WHEREOF, the parties hereto have executed this contract as of the award date.

UNITED STATES OF AMERICA

By [signature] for DON R. CAMPBELL
FOREST SUPERVISOR
(Title)

GATEWAY LUMBER COMPANY
(Purchaser)[4]

By [signature]
[signature: President]
(Title)

19023 47th AV NE
(Business Address)
Arlington WA 98223

Two Witnesses:[3]

(Name)

(Address)

(Name)

(Address)

I,[5] [signature: Raymond R. Hurlbert], certify that I am the [Treasurer] Secretary of the corporation named as Purchaser herein; that [W. J. Hammer] who signed this contract on behalf of Purchaser, was then [President] of said corporation; that said contract was duly signed for and in behalf of said corporation by authority of its governing body, and is within the scope of its corporate powers. [signature: Raymond R. Hurlbert]

CORPORATE SEAL[6]

(12)

(OVER)
1

2400-6, Page 101 (9/73)

The following conditions apply to the indicated portions of Division B - Standard Provisions issued Sept. 1973 (Month-Year)

**A1 – Location and Area,** applicable to B1.1

This Sale Area of 138 acres more or less is located in:

Section 23, NE¼ section 24, T.30N., R.9E., W.M., surveyed, Snohomish County, Washington.

**A2 – Volume Estimate and Utilization Standards,** applicable to B2.1, B2.2, B2.4 and B6.4

| SPECIES AND PRODUCT | ESTIMATED QUANTITY AND UNIT OF MEASURE | MINIMUM TREE SPECIFICATIONS INCLUDE ONE MINIMUM PIECE | MINIMUM PIECE SPECIFICATIONS | | |
|---|---|---|---|---|---|
| | | DIAMETER BREAST HIGH (d.b.h.) *Inches* | LENGTH *Feet* | DIAMETER INSIDE BARK AT SMALL END *Inches* | NET SCALE IN % OF GROSS SCALE |
| 1/ Pieces Subject to Per M Pricing: | M Board Feet | | | | |
| Douglas-Fir | 200 | 9.0 | 8 | 6 | 33 1/3 |
| Western Hemlock and Other Coniferous Species | 3700 | 9.0 | 8 | 6 | 33 1/3 |
| All Species Cedar | 1300 | 9.0 | 8 | 6 | 33 1/3 |
| Material Subject to Per Acre Pricing: (That which does not meet the above specifications.) | Acres | | | | |
| Utility (Pulp) and Special Cull | 109 | 9.0 | 12 | 6 | N/A |
| TOTAL | 5200 MBF 109 ACRES | | | | |

1/ A PIECE IS ONE OR MORE A13 PRODUCTS (ONE OR MORE SCALING SEGMENTS) CONTAINING AT LEAST 30 BOARD FEET, NET SCALE.

**A3 – Timber Designations,** applicable to B2.3; acres are approximate:

| | Number | Acres |
|---|---|---|
| Clearcutting Units (B2.31) | 2 | 104 |
| Specified Road Clearing (B2.32) | | 5 (170 M BD FT) |
| Overstory-Removal Units (B2.33) | xxx | xxx |
| Understory-Removal Units (B2.34) | xxx | xxx |
| Individual Trees (B2.35) | | xxx |
| Incompletely-Marked Timber (B2.36) | | xxx |

**A4 – Dead Trees Required to be Felled,** applicable to B2.12, B2.3 and B6.4

**Size Requirements:** 15 feet high and 12 inches d.b.h.

Dead trees to be cut as part of Road Construction will be described in Sec. 201.

**Number Limitations:** Applicable only if Sale Area Map indicates there are subdivisions where timber is to be designated after date of sale advertisement. In addition to dead trees felled within Clearcutting Units, construction clearings and other authorized development clearings, no more than N/A dead trees must be felled within subdivisions, or those portions thereof, where timber is designated after date of sale advertisement. Number limitation does not apply to subdivisions, or portions thereof, designated at time of sale advertisement.

**A5 – Timber Payment Rates,** applicable to B3.1 and B4.0

**A5a** – For Species and Products to be Paid for at Rates Escalated under B3.2

| SPECIES AND PRODUCT | UNIT OF MEASURE | RATES PER UNIT OF MEASURE | | | | | BASE INDEX |
|---|---|---|---|---|---|---|---|
| | | BASE $ | ADVERTISED $ | BID PREMIUM $ | BID *(Tentative)* $ | REQUIRED DEPOSITS SLASH DISPOSAL $ | |
| NONE | | | | | | | |

**A5b** – For Species and Products to be Paid for at Flat Rates

| SPECIES AND PRODUCT | UNIT OF MEASURE | RATES PER UNIT OF MEASURE | | | | |
|---|---|---|---|---|---|---|
| | | BASE $ | ADVERTISED $ | BID PREMIUM $ | BID *(Flat)* $ | REQUIRED DEPOSITS SLASH DISPOSAL $ |
| 1/ Pieces Subject to Per M Pricing: | M BD FT | | | | | |
| Douglas-Fir | | 9.62 | 250.08 | - - - | 250.08 | 6.38 |
| Western Hemlock and Other Coniferous Species | | 8.62 | 126.30 | 103.70 | 230.00 | 6.38 |
| All Species Cedar | | 8.62 | 258.78 | 151.22 | 410.00 | 6.38 |
| Material Subject to Per Acre Pricing: | ACRES | | | | | |
| (That which does not meet the above specifications.) | | | | | | |
| Utility (Pulp) and Special Cull | | 1.83 | 1.83 | - - - | 1.83 | - - - |

1/ A PIECE IS ONE OR MORE A13 PRODUCTS (ONE OR MORE SCALING SEGMENTS) CONTAINING AT LEAST 30 BOARD FEET, NET SCALE.

For purposes of convenience in collection and bookkeeping, Bid Rates stated in A5 include payment of deposits for sale area betterment required pursuant to 16 U.S.C. 576b. Such deposits are not included as Required Deposits defined hereunder.

14

Mt. Baker-Snoqualmie National Forest
1022 First Avenue
Seattle, WA 98104

2450

MA 3 1982

Ray Hurlbert
Gateway Lumber, Inc.
27408 72nd Ave. N.W.
Stanwood, WA 98292

RE: Eldred Creek Timber Sale
Contract No. 062090

Dear Sir:

Your letter of March 29, 1982, requested 153 days of Contract Term Adjustment for time lost during the 1981 field season. This is for the entire Normal Operating Season which runs from June 1 to October 31, (A20).

I have reviewed your plan of operation (C6.3) and the annual schedule of planned activities (B 6.31) and have found the following:

1. Plan of Operations (C6.3) - this indicates that your plans were to begin logging Unit No. 2 in June 1981 to be followed by Unit No. 1 in September 1981.

2. Annual Schedule of Major Activities (B 6.31). This indicated a change from your plan of operations. This revised schedule indicated that Unit No. 1 would be logged first, followed by Unit No. 2 in October, 1981. However, this schedule was not submitted to the District Ranger until October 6, 1981, or 25 days prior to the end of the Normal Operating Season. B6.31 requires that this schedule be submitted annually prior to commencing operations. Therefore, my decision will be based on your plan of operations submitted in 1980, since that is the only plan we had when you lost time.

Road No. 3055 and 3055B both were blocked by slumps. Repairs to both roads were completed by September 24, 1981, so access to the entire sale was available at that time.

15

Under the 1980 plan of operations, you lost 24 days from September 1 to September 29, 1981. However, since an estimated 40 percent of Unit No. 1 could have been logged at any time from September 1, I am granting only half the time lost.

Therefore, pursuant to B8.21, the Termination Date on A19 is adjusted to June 12, 1983. This covers your loss of time of 12 days between September 1, 1981 and September 24, 1981.

Sincerely,

**BRUCE MATEER**

BRUCE MATEER
Timber Staff Officer

cc: Monte Cristo

VMELCHER/jc/04/15/82
0611C

letters mailed 5/3

Mt. Baker-Snoqualmie National Forest
1022 First Avenue
Seattle, Washington 98104

2450

2 0 MAY 1983

Gateway Lumber Co.
19023 47th Ave. N.E.
Arlington, Washington 98223

Re: ELDRED CREEK Timber Sale
Contract No. 06209-0

We have received your recent letter in which you request mutual cancellation of your ELDRED CREEK Sale Contract or Contract Term Adjustment for the 1982 operating season.

I have reviewed your sale on the ground, and am not willing to consider mutual cancellation as you suggest. Immediately prior to your commencing operations, we will repair the road damage so that you may operate on your sale and complete your contract obligations.

In regard to Contract Term Adjustment, I find that you are eligible for 66 days as follows:

| | |
|---|---|
| Days in 1983 operating season | 153 |
| Percent of sale area not available in 1982 operating season due to road damage | 43% |
| Days of Contract Term Adjustment | 66 |

Therefore, pursuant to B8,21, the termination date in A19 is adjusted to August 17, 1983. This covers your loss of 66 days by adding these days to your previous termination date of June 12, 1983.

Your request for Contract Term Extension dated January 10, 1983 is being processed and the contract modification will be dent to you for signature shortly. A condition of this extension is that you must submit a revised Plan of Operations (C6.3) for our approval. Please send this to the Darrington District Ranger as soon as possible. A form for this purpose is attached for your use.

BRUCE MATEER

BRUCE MATEER
Contracting Officer

17

United States Department of Agriculture
Forest Service

# AGREEMENT TO MODIFY CONTRACT
(Timber Sale)

Contract No.
062090
Eldred

1. It is mutually agreed that the above designated timber sale contract, signed by Gateway Lumber Company of Arlington, Washington hereinafter called the purchaser and by Don R. Campbell (Name), Forest Supervisor (Title) for the United States of America as of the 19th day of November, 1979 6/ XXXXXXXXXXXXXXXXX modified as follows: XXXXXXXXXXXXXX be extended to the 17th day of September, 1983 and be modified as follows:

Pursuant B8.3 purchaser seeks conditional extension for the purpose of considering the conditions offered pursuant to B8.23 - Contract Term Extension, Forest Service hereby grants a 30 day conditional extension during which period of time purchaser agrees not to cut or remove Included Timber from the sale area.

Draw a diagonal line with pen and ink in unused portion of form.

2. Pursuant to this mutual agreement, the purchaser hereby agrees to cut and remove timber in strict accordance with all and singular the terms and provisions of the aforesaid contract as herein modified.

IN WITNESS WHEREOF, the parties hereto have executed this modification of contract as of the 1/ 16th day of August, 1983.

UNITED STATES OF AMERICA

By: Bruce Mateer (Signature of approving officer) — Bruce Mateer, Contracting Officer (Title)

Two witnesses: 2/

(Name of witness)

(Address)

(Name of witness)

(Address)

Gateway Lumber Company 3/ Purchaser

By: [signature]

Title: Pres.

Camano Island, WA 98292 Purchaser's Business Address

I, 4/ [signature], certify that I am the Sec Tre Secretary of the corporation named as purchaser herein; that Jim Hammond who signed this contract on behalf of the purchaser, was then Pres. of said corporation; that said contract was duly signed for and in behalf of said corporation by authority of its governing body, and is within the scope of its corporate powers.

18

CORPORATE SEAL 5/

1/ The date approving Forest officer signs this form.
2/ The signatures and addresses of two witnesses are required if sale is to other than a corporation.
3/ If contracting party is a co-partnership, the signatures should be: XYZ Company, by John Doe, *a member of the firm*. If contracting party is a corporation, form of signature should be: XYZ Company, by John Doe, *President (or other officer or agent)* and the seal of the corporation must be impressed or indicated.
4/ The certificate must be completed if the purchaser is a corporation.
5/ If the corporation has no corporate seal that fact shall be stated, in which case a scroll or adhesive seal shall follow the corporate name.
6/ Delete "as heretofore modified" if not applicable.

2400-9 (3/69)

...partment of Agriculture

Contract No. 06209-0
ELDRED CREEK

# ...ENT TO EXTEND AND MODIFY TIMBER SALE CONTRACT

1. It is mutually agreed, that the contract period of the above designated timber sale contract, signed by W.J. Hammer, President Gateway Lumber Company of 19023 47th Ave. N.E., Arlington, Washington 98223, hereinafter called the purchaser and by Bruce Mateer for Don R. Campbell, Forest Supervisor for the United States of America
(Name) (Title)
as of the 19th day of November 1979 as heretofore modified, be extended to August 17, 1985, ~~and it is further agreed to modify the contract as follows:~~ and in addition be modified as follows:

a. The rates to be paid for stumpage and required deposits, for all timber cut which is scaled on or after August 1, 1983 are shown in A5b, revised

b. By revising A13, revised 2-15-83, which is attached hereto and made a part hereof.

c. Add the following to A22 - Inapplicable Standard Provisions:
B4.221 Advance Deposits
B4.23 Refund of Excess Cash

(Continued on page 2 which is attached hereto and made a part hereof)

2. *Pursuant to this mutual agreement, the purchaser agrees to cut and remove timber in strict accordance with all and singular the terms and provisions of the aforesaid contract as herein modified.*

3. IN WITNESS WHEREOF, the parties hereto have executed this agreement to extend and modify contract as of the 20TH day of SEPTEMBER, 1983

Two Witnesses:

(Name of Witness)

(Address)

(Name of Witness)

(Address)

UNITED STATES OF AMERICA
For By Bruce Mateer Title Contracting Officer

GATEWAY LUMBER COMPANY
(Purchaser)
By: [signature]
Title: PRESIDENT
(Business Address)

I, [signature] certify that I am the Sec. Secretary of the corporation named as purchaser herein; that [signature] who signed this agreement to extend *and modify* contract on behalf of the purchaser was then [signature] of said corporation; that said agreement to extend *and modify* contract was duly signed for and in behalf of said corporation by authority of the governing body, and is within the scope of its corporate powers.

Corporate Seal

## Consent of Surety

We, St. Paul Fire & Marine Insurance Co. (surety) ~~(sureties)~~ do hereby join in this agreement to extend the contract period and agree that our bond shall bind us, our heirs, executors, administrators, successors and assigns, and each and every one of us and them jointly and severally, in the same manner as if said extended period had been included in the original period of contract to insure compliance with which our bond was given.

Dated at SEATTLE, WASHINGTON, this 20TH day of SEPTEMBER, 1983

In presence of:
Witness

Individual Surety
(Seal)
(Seal)

Attest:

Corporate surety
St. Paul Fire & Marine Insurance Co.
Business address
1700 FOURTH & BLANCHARD BUILDING
~~1800 Park Place~~, Seattle, WA. 98101
By [signature]
Title
ATTORNEY-IN-FACT

AFFIX CORPORATE SEAL

19

c. Add the following to A23 - List of Special Provisions:

| | |
|---|---|
| C4.221 (Option 2) | Advance Deposits (4/82) |
| C4.23 (Option 2) | Refund of Excess Cash (4/82) |
| C4.231# | Refund of Excess Extension Deposits (11/82) |
| C4.251# | Deferral of Extension Deposits (11/82) |
| C4.252# | Extension Deposits (4/82) |
| C4.4 | Payments Not Received (6/81) |
| C5.12 | Use of Roads by Purchaser (2/82) |
| C6.24# | Protection of Cultural Resources (6/81) |
| C6.25# | Protection of Habitat of Endangered, Threatened and Sensitive Species (11/80) |
| C6.313# | Special Cutting Schedule (3/71) |
| C6.341 | Prevention of Oil Spills (6/81) |
| C8.641 | Use of Timber (6/81) |
| C9.2 | Disputes (7/80) |
| C9.5 | Settlement (10/77) |

d. Delete the following from A23:

| | |
|---|---|
| C6.24# | Protection of Cultural Resources (5/76) |
| C4.4 | Payments Not Received (2/76) |
| C5.12 | Use of Roads by Purchaser (12/76) |
| C6.25# | Protection of Habitat of Endangered Species (6/78) |
| C6.341 | Prevention of Oil Spills (6/78) |
| C8.641 | Use of Timber (6/78) |
| C9.2 | Disputes (11/75) |
| C9.5 | Settlement (10/77) |

e. Add Sale Area and Slash Disposal Maps, revised 3/83.

f. By revising C5.411# - Road Maintenance Deposit Schedule, revised 1/27/83.

And add the provision pages from the above which are attached hereto and made a part hereof.

A5 – Timber Payment Rates, applicable to B3.1 and B4.0

A5a – For Species and Products to be Paid for at Rates Escalated under B3.2

| SPECIES AND PRODUCT | UNIT OF MEASURE | RATES PER UNIT OF MEASURE | | | | | BASE INDEX |
|---|---|---|---|---|---|---|---|
| | | BASE $ | ADVERTISED $ | BID PREMIUM $ | BID *(Tentative)* $ | REQUIRED DEPOSITS SLASH DISPOSAL $ | |
| None | | | | | | | |

A5b – For Species and Products to be Paid for at Flat Rates Redetermined

| SPECIES AND PRODUCT | UNIT OF MEASURE | RATES PER UNIT OF MEASURE | | | | |
|---|---|---|---|---|---|---|
| | | BASE $ | ADVERTISED $ | BID PREMIUM $ | BID *(Flat)* $ | REQUIRED DEPOSITS SLASH DISPOSAL $ |
| 1/ PIECES SUBJECT TO PER M PRICING: | | | | | | |
| Douglas-fir | M Bd Ft | 9.62 | 250.08 | --- | 250.08 | 15.54 |
| Western hemlock and other coniferous species | M Bd Ft | 8.62 | 126.30 | 103.70 | 230.00 | 15.54 |
| All species cedar | M Bd Ft | 8.62 | 258.78 | 151.22 | 410.00 | 15.54 |
| MATERIAL SUBJECT TO PER ACRE PRICING: | | | | | | |
| (That which does not meet the above specifications Utility (pulp) and special cull | Acre | 1.83 | 1.83 | --- | 1.83 | N/A |

1/ A piece is one or more A13 products (one or more Scaling segments) containing at least 30 board feet net scale.

For purposes of convenience in collection and bookkeeping, Bid Rates stated in A5 include payment of deposits for sale area betterment required pursuant to 16 U.S.C. 576b. Such deposits are not included as Required Deposits defined hereunder.

Revised 2-15-83

A12 – Culvert Cost Rates, applicable to B5.252

| CULVERTS | | | | | DRAINAGE ACCESSORIES | | | | |
|---|---|---|---|---|---|---|---|---|---|
| DIAMETER OR RISE AND SPAN | GAUGE & MATERIAL | | ESTIMATED COST RATE PER FOOT | | ITEM AND SIZE | GAUGE & MATERIAL | | ESTIMATED COST PER UNIT | |
| | Al | Fe | FURNISH & INSTALL $ | INSTALL ONLY $ | | Al | Fe | FURNISH & INSTALL $ | INSTALL ONLY $ |
| None | | | | | | | | | |

Material Abbreviation Al - Aluminum; Fe - Galvanized Steel

A13 – Scaling Instructions and Specifications, applicable to B6.8

Name and Date of Governing Instructions: FSM 2443.7 - Third Party Scaling, (and R-6 Supplement to FSH 2409.11 for West Side Log Scaling through September 1978)

SCALING SPECIFICATIONS

| SPECIES | PRODUCT | MAXIMUM SCALING LENGTH (feet) | TRIM ALLOWANCE | | |
|---|---|---|---|---|---|
| | | | DIAMETER RANGE (inches) | LENGTH RANGE (feet) | TRIM ALLOWANCE (inches) |
| All species | logs | 40 | 6+ | 8-40 | 12 + 2 for each 10' over 40' |

22

United States Department of Agriculture | Forest Service | Mt. Baker-Snoqualmie National Forest | 1022 First Avenue Seattle, WA 98104

Reply To: 2450

Date: DEC 19 1985

Gateway Lumber Company
1206 North Shore Drive
Camano Island, WA. 98292

Re: Eldred Creek Timber Sale
Contract No. 062090

Gentlemen:

This timber sale has a termination date of August 17, 1985. Since your firm is a participant in the North Side class action suit, we should have given this contract a conditional extension to keep the contract in force until the suit was settled. Therefore, this contract is hereby conditionally extended from its present termination date until 30 days after the February 15 injunction is dissolved. No felling or removal of timber is permitted when a contract is under conditional extension. This conditional extension is retroactive to August 18, 1985.

You should be advised that the North Side injunction was dissolved on November 27, 1985. Therefore, you have until December 27, 1985 to submit a Multi-Sale Extension Plan. If that is not done, the sale will expire on December 27, 1985. Please contact this office or the Darrington Ranger District for information and forms.

VERN MELCHER

FOR BRUCE MATEER
Contracting Officer

cc: Darrington cs 12-19-85

23

United States Department of Agriculture | Forest Service | Mt. Baker-Snoqualmie National Forest | 1022 First Avenue Seattle, WA 98104

Reply To: 2430

Date: April 18, 1986

Gateway Lumber Company
1206 North Shore Drive
Camano Island, WA. 98292

Gentlemen:

This is to advise you that the North Side Injunction dissolved November 29, 1985. Your Eldred Creek Timber Sale, Contract No. 062090, awarded November 19, 1979 was under a conditional extension that expired when you failed to file a Multi-Sale Extension Plan by December 29, 1985.

Since this sale was not completed before it expired, I consider it to be a defaulted sale.

I do not plan to resell the sale. Therefore, damages will be based on an appraisal pursuant to B9.4, as of August 17, 1985. When I have completed my determination of damages, you will be notified.

A copy of this letter is being sent to your surety.

Sincerely,

BRUCE MATEER

BRUCE MATEER
Contracting Officer

cc: Darrington RD

St. Paul Fire & Marine Insurance Company
1800 Park Place
Seattle, WA. 98101

24

United States Department of Agriculture | Forest Service | RO

Reply to: 2430

Date: April 9, 1986

Subject: Resale of Defaulted Contract, Gateway Lumber Company, #062090 (Your ltr. 3/14)

To: Forest Supervisor, Mt. Baker-Snoqualmie NF

Enclosed is a copy of the Regional Attorney's advice. After verification of the company's status you may proceed to advise the purchaser that the sale will not be resold, and that therefore damages will be based on an appraisal as of its termination date pursuant to C9.4.

If you have already made the apprasial as of termination date you should send the calculation of damages along with a bill for the amount owed, if any, after reducing damages by the amount of earned effective purchaser credit, or cash, not used.

Joe E. Ragsdale
for WENDALL L. JONES
Director of Timber Management

Enclosures

4/18/86

Checked w/ Secretary of States office in Olympia.
Company filed Articles of Dissolution on 9/21/82

Vern

APR 14

25

EX 9

(a) If remedying such breach requires on-the-ground action by Purchaser, Purchaser shall have 30 practicable operating days during Normal Operating Season to do so, except under emergency conditions when action should not be delayed to prevent major damage.

(b) If such breach does not require on-the-ground action by Purchaser, such breach shall be remedied within 30 calendar days.

**B9.4 Failure to Cut.** In event of (a) termination for breach or (b) Purchaser's failure to cut designated timber on portions of Sale Area by Termination date, Forest Service shall appraise remaining Included Timber, unless termination is under B8.22. Such appraisal shall be made with the standard Forest Service method in use at time of termination.

Damages due the United States for Purchaser's failure to cut and remove such timber meeting Utilization Standards shall be the amount by which Current Contract Value plus the cost of resale, less any effective Purchaser Credit remaining at time of termination, exceeds the resale value at new Bid Rates. If there is no resale, damages due shall be determined by subtracting the value established by said appraisal from the difference between Current Contract Value and Effective Purchaser Credit.

If Purchaser has failed to cut individual trees in the portions of Sale Area cutover and there is no resale of such individual trees, Purchaser shall pay Forest Service for cost of felling and removal or otherwise eliminating such uncut trees in addition to payment of damages described above, except for trees not cut for reasons stated in B6.4.

**B9.5 Settlement.** If obligations of Purchaser have not been fully discharged by Termination Date, any money advanced or deposited hereunder shall be retained to be applied toward unfulfilled obligations of Purchaser without prejudice to any other rights or remedies of Forest Service. Such funds may be treated as cooperative deposits under B4.225 for uncompleted work 30 calendar days after receipt of written notice from Forest Service to Purchaser of work to be done and Purchaser's failure to deny the obligation or to do the work.

**B9.6 Contract Closure.** The Forest Service officer signing this contract, his successor or superior officer shall give appropriate written notice to Purchaser when Purchaser has complied with the terms of this contract. Purchaser shall be paid refunds due from Timber Sale Account under B4.24 and excess cooperative deposits under B4.225.

# DIVISION C

## Special Provisions

In accordance with A23, the Sections, Subsections, and Items therein listed are attached and made a part hereof. This material is indexed by the numbering system used in Division B. The numbers after the C (which identifies material in this Division) indicate the Part, Section, Subsection, or Item of Division B, which is being supplemented or modified by each particular provision included in this Division.

26

☆U.S. Government Printing Office: 1973 O—517-270

SALE Eldred Creek Damage Appraisal DATE April, 1986

TIMBER SALE REPORT AND APPRAISAL

MT. BAKER-SNOQUALMIE NATIONAL FOREST

DARRINGTON RANGER DISTRICT

PREPARED BY: CAROL Gladsjo 4-86 revised 6/24/86
DATE

Checked ~~REVIEWED~~ BY: Everett White 4-86
DATE

REVIEWED BY: Dennis Dietrich 4-30-86
DATE

REVIEWED BY: Vern Melcher 4-29-86
DATE

REVIEWED BY: ______
DATE

APPROVED BY: William Pratt 5/8/86
DISTRICT RANGER DATE

L.

# APPRAISAL SUMMARY

(126-51)

SALE NAME: ELDRED CREEK SUMMARY CHECKED BY: DATE: 06/24/86

CARD TYPE 5

SPECIFIED RD CONST (MILES) .0 (17-19) RECONSTRUCTION (MILES) .0 (20-22) PURCH CR LIM $ 0 (INC. $ (23-29)

PRODUCT: APPRAISED TO: HAUL (MILES) 37 (33-35) TEMP RD CONSTR (MILES) .1 (30-32) TEMP RD COST $ 5580 (36-42)

1 EVERETT

4 EVERETT BASIC DATA PERIOD: C.Y.1982R PLY:2ND QTR 1985

ADJ TO APPR BASE PERIOD: LOG: 2ND QTR 1985

| CARD TYPE 6 | | | | | | CARD TYPE 7 | |
|---|---|---|---|---|---|---|---|
| 1 PRODUCT/UNIT | (14-15) | 1-1 | 1-1 | 1-1 | 4-1 | : UNIT OF MEASURE: | |
| 2 SPECIES | | C | D | H&D | PAM* | : | |
| 3 SPECIES CODE | (16-18) | 242 | 205 | 263 | 002 | : (T) TOTAL OR (A) | |
| 4 % BY SPECIES | | 23.27% | 3.62% | 65.91% | 7.20% | : T | 100.0 % |
| 5 VOLUME | (19-25) | 1267 | 197 | 3589 | 392 | : T | 5445 ( |
| 6 SELLING VALUE | | 537.29 | 576.46 | 304.78 | 308.49 | : A | 368.98 |
| 7 SV ADJUSTMENT, SCHEDULE | | 1.000 | 1.000 | 1.000 | 1.000 | : | |
| 8 ADJ SELLING VALUE | | 537.29 | 576.46 | 304.78 | 308.49 | : | |
| 9 CHIP & BYPRODUCTS | | 0.00 | 47.07 | 58.09 | 0.00 | : | |
| 10 SELLING VALUE L.S. | (26-31) | 537.29 | 623.53 | 362.87 | 308.49 | : A | 408.97 |
| 11 FALLING & BUCKING | | 11.63 | 11.63 | 11.63 | 3.86 | : A | 11.07 ( |
| 12 SKIDDING | | 33.48 | 33.48 | 33.48 | 26.95 | : A | 33.01 ( |
| 13 LOADING | | 6.47 | 6.47 | 6.47 | 5.82 | : A | 6.42 ( |
| 14 SUBTOTAL, STUMP-TO-TRUCK | | 51.58 | 51.58 | 51.58 | 36.63 | : | |
| 15 HAUL | | 18.50 | 18.50 | 18.50 | 16.63 | : A | 18.37 ( |
| 16 ROAD MAINTENANCE | | 0.33 | 0.33 | 0.33 | 0.00 | : A | .31 ( |
| 17 SUBTOTAL, TRANSPORTATION | | 18.83 | 18.83 | 18.83 | 16.63 | : | |
| 18 GENERAL LOGGING OVERHEAD | | 13.41 | 13.41 | 13.41 | 11.20 | : A | 13.25 ( |
| 19 LOGGING DEPRECIATION | | 14.50 | 14.50 | 14.50 | 12.96 | : A | 14.39 ( |
| 20 SUBTOTAL, ADMINISTRATIVE | | 27.91 | 27.91 | 27.91 | 24.16 | : | |
| 21 SLASH DISPOSAL (INC. 15.45 CO-OP) | | 16.65 | 16.65 | 16.65 | 0.00 | : A | 15.45 ( |
| 22 EROSION CONTROL | | 1.96 | 1.96 | 1.96 | 0.00 | : A | 1.82 ( |
| 23 SNAG DISPOSAL | | 0.00 | 0.00 | 0.00 | 0.00 | : A | .00 ( |
| 24 MISC. | | 0.38 | 0.38 | 0.38 | 0.34 | : A | .38 ( |
| 25 SUBTOTAL, ENVIRONMENTAL PROTECTION | | 18.99 | 18.99 | 18.99 | 0.34 | : | |
| 26 TEMPORARY ROADS | | 1.10 | 1.10 | 1.10 | 0.00 | : A | 1.02 ( |
| 27 OTHER TEMPORARY DEVELOPMENTS | | 0.00 | 0.00 | 0.00 | 0.00 | : A | .00 ( |
| 28 SUBTOTAL, TEMPORARY DEVELOPMENT | | 1.10 | 1.10 | 1.10 | 0.00 | : | |
| 29 SUBTOTAL, LOGGING COSTS | (32-36) | 118.41 | 118.41 | 118.41 | 77.76 | : A | 115.49 |
| 30 SPECIFIED ROAD COST (A10) | | 0.00 | 0.00 | 0.00 | 0.00 | : A | .00 |
| 31 TOTAL LOGGING COST L.S., SCHEDULE DARS | | 118.41 | 118.41 | 118.41 | 77.76 | : A | 115.49 |
| 32 MFG. COST L.S. | | 182.03 | 234.43 | 155.48 | 182.02 | : A | 166.42 |
| 33 WASH STATE EXCISE TAX | | 10.84 | 12.34 | 3.23 | 1.19 | : A | 5.18 |
| 34 SUBTOTAL, MANUFACTURING | (37-41) | 192.86 | 246.77 | 158.71 | 183.21 | : A | 171.60 |
| 35 TOTAL PRODUCTION COST L.S. | | 311.27 | 365.18 | 277.12 | 260.97 | : A | 287.09 |
| 36 CONVERSION (10)-(35) | | 226.02 | 258.35 | 85.75 | 47.52 | : A | 121.88 |
| 37 P&R RATIO % NORMAL/ADVERTISED | | 10.00 | 10.00 | 10.00 | 10.00 | : NORM | 10.0 ADV |
| 38 P&R MARGIN NORMAL/ADVERTISED | | 48.89 | 56.74 | 33.02 | 28.07 | : NORM | 37.21 ADV |
| 39 INDICATED NET STUMPAGE (36)-(38) | | 177.13 | 201.61 | 52.73 | 19.45 | : A | 84.67 |
| 40 INDICATED ADVERTISED RATES (39)+(30) | | 177.13 | 201.61 | 52.73 | 19.45 | : T | 461013.25 |
| | | | | | | : A | 84.67 |
| 41 BASE RATES | | 15.29 | 19.29 | 15.29 | 0.50 | : A | 14.37 |
| 42 ADJUSTMENTS TO BASE RATES | | 0.00 | 0.00 | 0.00 | 0.00 | : A | .00 |
| 43 ADVERTISED RATES (40)+(42) | (42-47) | 177.13 | 201.61 | 52.73 | 19.45 | : T | 461013.25 |
| | | | | | | : A | 84.67 |
| 44 INDICATED STAT NET RATES(43)-(30) | | 177.13 | 201.61 | 52.73 | 19.45 | : A | 84.67 |
| 45 APPRAISED NET RATES | (48-53) | 177.13 | 201.61 | 52.73 | 19.45 | : A | 84.67 |
| 46 BASE INDICES | | 0.00 | 229.98 | 174.95 | 0.00 | : | |

* PAM ACTUALLY APPRAISED AT $ 73.31,/ACRE FOR .104 ACRES

27a

ELDRED CREEK DAMAGE APPRAISAL

The Eldred Creek Timber Sale expired uncompleted August 17,1985.
Contract No. 062090
Purchaser - Gateway Lumber Company

All specified roads have been completed and accepted.
All right-of-way volume has been removed.
Cash on hand $0.00 Performance Bond $144,000.00

Damages will be calculated based on the difference in the value of the original sale and the appraised value at termination since this sale is not planned to be reoffered.

C9.4 does not apply.

1. Contract Value and Uncut Volume at Termination Date

| | | |
|---|---|---|
| All species cedar | 1267mbf x $410.00 = | $519,470.00 |
| Douglas-fir | 197mbf x $250.08 = | $ 49,265.76 |
| Western hemlock and other coniferous species | 3589mbf x $230.00 = | $825,470.00 |
| PAM | 392mbf x $ 0.50 = | $ 196.00 |
| | 5445mbf | $1,394,401.76 |

2. Appraised Value at Termination

| | | |
|---|---|---|
| All species cedar | 1267mbf x $177.13 = | $224,423.71 |
| Douglas-fir | 197mbf x $201.61 = | $ 39,717.17 |
| Western hemlock and other coniferous species | 3589mbf x $ 52.73 = | $189,247.97 |
| PAM | 392mbf x $ 19.45 = | $ 7,624.40 |
| | 5445mbf | $461,013.25 |
| Transaction Evidence | 5445mbf x $ 6.70 = | $ 36,481.50 |
| | | $497,494.75 |

New South awarded 8/12/85 (only sale sold around this time)
Bid Premium $15.92 on cedar (4000mbf) = $63,680.00
Other species fixed 9500mbf total
Average overbid $63,680.00/9500mbf = $6.70/mbf

Damage Appraisal Report Format - FSM 2433.54--5,6
Appraisal Prepared by Carol Gladsjo, April 10,1986

28

# ELDRED CREEK DAMAGE APPRAISAL

| A. <u>Calculation of Potential Damages</u> | <u>Potential Damages</u> MBF | $ |
|---|---|---|
| 1. Volume and Contract Value of Remaining Timber | | |
| a. On Area Not Cut Over (Item 4) | 5445 | 1,394,401.76 |
| b. On Area Cut Over | | |
| (1) Designated | | |
| (a) Cut, But Not Removed (Item 1) | 0 | 0.00 |
| (b) Not Cut (Item 2) | 0 | 0.00 |
| (2) Not Designated, Cut, But Not Removed (Item 1) | 0 | 0.00 |
| (3) Material Wasted (Item 3) | 0 | 0.00 |
| Total Remaining Timber | 5445 | 1,394,401.76 |
| 2. Liquidated Damages - None Provided for | | 0.00 |
| 3. Cost of Resale - Not Reoffered | | 0.00 |
| 4. Less Effective Purchaser Credits - None | | 0.00 |
| 5. Maximum Potential Damages | | 1,394,401.76 |

Appraised Value at Termination Date is: $497,494.75
<u>Less Than Maximum Potential Damages</u>
<u>Timber Not Reoffered</u>

| B. <u>Calculation of Resale Value</u> | MBF | $ |
|---|---|---|
| 1. Appraised Value at Termination: | | |
| a. Original Terms | 5445 | 497,494.75 |
| b. New Terms | | |
| 2. Adjustment for Changed Conditions | -- | -- |
| 3. Resale Bid Value | -- | -- |
| 4. Line (B2) + (B3) | -- | -- |
| 5. Resale Value | | 497.494.75 |

| C. <u>Calculation of Damages</u> | |
|---|---|
| 1. Maximum Potential Damage (A5) | 1,394,401.76 |
| 2. Resale Value (B5) | 497,494.75 |
| 3. Damages (A5) less (B5) | 896,907.01 |
| 4. Unobligated Cash on Hand | 0.00 |
| 5. Additional Due From Purchaser | 896,907.01 |
| 6. Refund Due Purchaser | -- |

29

United States Department of Agriculture | Forest Service | Mt. Baker-Snoqualmie National Forest | 1022 First Avenue Seattle, WA. 98104

Same letter as before, but sent to new address / Hammer has moved. JS 8/15/86

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Reply To: 2450

Date: August 13, 1986

Jim Hammer
c/o Smokey Point Lumber, Inc.
19129 Smokey Point Blvd.
Arlington, WA. 98223

new address →

Gentlemen:

On December 29, 1985 your Eldred Creek Timber Sale, Contract #062090 expired uncompleted when you failed to submit a Multi-Sale Extension Plan. Accordingly, I have determined damages due the United States pursuant to Provision B9.4 - Failure to Cut. Enclosed is a Bill for Collection, due August 25, 1986 for such damages.

I have considered your failure to complete the contract and the resultant Government claim under the Contract Disputes Act of 1978.

Findings

1. You were awarded the Eldred Creek Timber Sale on November 19, 1979, on contract Form 2400-6 (9/73), with a termination date of March 31, 1983.

2. The contract was subsequently extended for two years to August 17, 1985 under the Chief, Forest Service, waiver of extension policy.

3. Since your company was a party to the North Side Lumber Company lawsuit (Civil No. 83-490-BU), the contract was given a conditional extension until 30 days after the February 15, 1984 injunction was dissolved. The North Side injunction was dissolved on November 29, 1985. When you failed to submit a Multi-Sale Extension Plan by December 29, 1985, the contract expired. No timber had been removed by Termination Date.

4. A decision was made by the Contracting Officer not to reoffer the remaining timber because of the presence of critical S-8 soils on the sale area. B9.4 Failure to Cut, specifies the means of determining damages due the United States for Purchaser's failure to cut and remove such timber meeting Utilization Standards as subtracting the value established by appraisal at Termination Date from the difference between Current Contract Value and Effective Purchaser.

5. Pursuant to B9.4, damages were calculated as follows:

| | |
|---|---|
| Effective Purchaser Credit | None |
| Current Contract Value of uncut timber | $1,394,401.76 |
| Appraised value at Termination | 497,494.75 |
| Total damages | $896,907.01 |
| Less cash on hand | None |
| Amount owed by purchaser | $896,907.01 |

Decision

It is my decision that damages are owed the United States and the determination of such damages is correct and in accordance with Standard Provision B9.4 - Failure to Cut. Therefore, Gateway Lumber Company is liable to, and must pay the United States the sum of $896,907.01.

This is the final decision of the Contracting Officer. This decision may be appealed to the Agriculture Board of Contract Appeals. If you decide to make such an appeal, you must mail, or otherwise furnish written notice thereof, to the Agriculture Board of Contract Appeals, within 90 days from the date you receive this decision. A copy thereof shall be furnished to the Contracting Officer from whose decision the appeal is taken. The notice shall indicate that an appeal is intended, should reference this decision, and identify the contract by number. In lieu of appealing to the Agriculture Board of Contract Appeals, you may bring action directly in the U.S. Claims Court, within 12 months of the date you receive this decision.

Sincerely,

W. N. Melcher for
BRUCE MATEER
Contracting Officer

Enclosure

cc: Darrington RD

St. Paul Fire & Marine Insurance Company
1800 Park Place,
Seattle, WA. 98101

F&A w/Bill for Collection

31

U. S. DEPARTMENT OF AGRICULTURE
FOREST SERVICE

# BILL FOR COLLECTION

PLACE OF ISSUE

Seattle, WA

DATE OF ISSUE

8/06/86

Mt.Baker-Snoqualmie N.F. 1022 First Ave. Seattle, WA 98104

Gateway Lumber Company
1206 North Shore Drive
Camano Island, WA 98292

FOLD HERE

| DATE OR PERIOD | DESCRIPTION | AMOUNT |
|---|---|---|
| | Eldred Creek Timber Sale, Contract #062090<br>Bill for Collection for damages | $896,907.01 |

| BILL NO. | UNIT NO. | CONTRACT NO. | DATE PAYMENT DUE | AMOUNT DUE → | |
|---|---|---|---|---|---|
| 3990 | TS05 | 04 062090 | 8/25/86 | | $896,907.01 |

| TRANS. CODE | APPRO-PRIATION (F.S.) | STATE | ACCOUNT OR ACTIVITY | FUNCTION MAJOR | FUNCTION SUB | SUB UNIT | PROJECT P | PROJECT MAJOR | PROJECT S | PROJECT SUFF | OBJ. CL. MAJ. | OBJ. CL. S | OBJ. CL. RT | AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A | | | | | | | 8 | 7052 | 6 | | | | | $896,907.01 |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |

32

TOTAL → $896,907.01

FS 6500-89 (6/80)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| GATEWAY LUMBER CO., et al. (Gateway Lumber Co.), Plaintiffs, | ) | Consolidated under lead case No. 87-435C (No. 87-435C) (Judge Bruggink) |
| v. | ) | |
| THE UNITED STATES, Defendant. | ) | |

DECLARATION OF CHRISTINE ANDERSON
IN GATEWAY LUMBER CO. v. UNITED STATES, NO. 87-435C

I, Christine Anderson, am a contract Administration Forester in the Forest Service Regional Headquarters Office for the Pacific Northwest Region. I am also a contracting officer on the Olympic National Forest and have been since 1985, as well as a contracting officer on the Mt. Baker-Snoqualmie National Forest since 1993.

I have reviewed the official Forest Service contract files and records pertaining to the Eldred Creek Timber Sale which is the subject of this case. In making this declaration, I have relied upon the information contained in the Forest Service's records concerning the Eldred Creek Sale, as well as my knowledge and more than thirty years of experience as a Forest Service contracting officer, appraiser, and pre-sale administrator.

1. On February 12, 1979, the Forest Service, United States Department of Agriculture ("Forest Service"), advertised for sale certain timber located in the Mt. Baker-Snoqualmie National Forest in Washington State. The sale was named the "Eldred Creek Sale." D. App. 1.[1]

[1] "D. App. __" refers to the cited page(s) in the appendix accompanying our motion.

2. On the same date, the Forest Service issued a "Timber Sale Prospectus" for the Eldred Creek Sale, containing information for prospective bidders concerning the timber and the terms and conditions of its sale. D. App. 2-9. According to the volume estimate set forth in the prospectus (and in the timber sale contract), the Sale included an estimated 5,200 MBF[2] of merchantable timber located in two clearcutting units. The total estimated volume included the following species and estimated volumes: 3,700 MBF of Western Hemlock and Other Coniferous Species ("H&O"); 1,300 MBF of Cedar ("C"); and 200 MBF of Douglas Fir ("DF"). The Sale also included an additional volume of utility pulp and special cull material located throughout 109 acres of the sale area that was subject to per-acre pricing ("PAM"). D. App. 3. As further indicated in the prospectus, the Sale called for the construction and reconstruction of approximately 2.2 miles of specified roads. D. App. 6. The prospectus stated that the contract termination date was to be March 31, 1983. D. App. 4.

3. The total advertised value of the Eldred Creek Sale, established by a Forest Service appraisal, was $853,940. D. App. 10.

4. The Forest Service conducted bidding for the Sale on March 14, 1979. Gateway Lumber Company ("Gateway") was the high bidder, among eight, with a total bid value of $1,434,216. D. App. 11.

5. On November 19, 1979, the Forest Service awarded Gateway the Eldred Creek Timber Sale Contract. Under the terms of the contract, Gateway was obligated to cut, remove, and pay for all of the timber included in the Sale by the contract termination date, March 31, 1983.

---

[2] "MBF" is a unit of measurement meaning "thousand board feet." Thus, 1 MBF equals one thousand board feet of timber.

However, the contract did not require Gateway to complete the specified roads because Gateway, as a qualified small business enterprise, elected to have the Forest Service (through a contractor) perform that task. D. App. 12-14.

6. Thereafter, by letter dated May 3, 1982, the Forest Service, pursuant to Standard Provision B8.21, granted Gateway a contract term adjustment that adjusted the termination date to June 12, 1983. D. App. 15-16.

7. One year later, on May 20, 1983, the Forest Service, pursuant to Standard Provision B8.21, granted Gateway a second contract term adjustment that adjusted the termination date to August 17, 1983. D. App. 17.

8. On August 16, 1983, the parties executed an agreement to extend the contract termination date by thirty days, to September 17, 1983, to allow Gateway time to decide whether to accept a further extension available under a then-recent Forest Service policy. D. App. 18.[3]

9. Gateway decided to accept the extension. On September 20, 1983, the parties executed an agreement to extend and modify Gateway's contract. The agreement, among other things, extended the contract termination date by twenty-three months, to August 17, 1985. D. App. 19-22.

---

[3] Applicable regulation in effect during the relevant period authorized the Forest Service to grant extra-contractual extensions of timber sale contracts upon a finding that the substantial overriding public interest justified the extension. See 36 C.F.R. § 223.8(f)(2) (1983). Under this authority, the Chief of the Forest Service, during the early 1980s, adopted the SOFT I and SOFT II policies allowing contract extensions due to the then-depressed markets for forest products. The SOFT II policy authorized extensions of up to two years for sales sold before January 1, 1981, with termination dates prior to April 1, 1985. Gateway's Eldred Creek Sale qualified for an extension under this policy.

10. The parties later agreed to conditionally extend the termination date beyond August 17, 1985, until a date thirty days after dissolution of a district court injunction issued in North Side Lumber Co. v. Block, No. 83-490 (D. Or.). D. App. 23.

11. Gateway's Eldred Creek contract ultimately expired on December 29, 1985, thirty days after dissolution of the North Side injunction. By letter of April 18, 1986, the contracting officer notified Gateway that the contract had expired uncompleted and that the Forest Service had decided not to resell the sale. D. App. 24. The contracting officer's notice to Gateway that the Forest Service had decided against a resale was based upon an April 9, 1986 memorandum to the Forest Supervisor, Mt. Baker-Snoqualmie National Forest, from the Forest Service Regional Office. D. App. 25.

12. At the time the contract terminated, Gateway had removed no timber from the two clearcutting units included in the sale. During October and November 1983, Gateway removed a total of 147 MBF of right-of-way volume. This included 33.21 MBF of Cedar; 3.28 MBF of Douglas fir; and 111.15 MBF of Hemlock and other coniferous species.

13. The Eldred Creek Timber Sale contract contains Standard Provision B9.4 which provides in pertinent part:

> B9.4 Failure to Cut. In the event of (a) termination for breach or (b) Purchaser's failure to cut designated timber on portions of the Sale Area by Termination date, Forest Service shall appraise remaining Included Timber, unless termination is under B8.22. Such appraisal shall be made with the standard Forest Service method in use at time of termination.
>
> Damages due the United States for Purchaser's failure to cut and remove such timber meeting Utilization Standards shall be the amount by which the Current Contract Value[,] plus the cost of resale, less any effective Purchaser Credit remaining at time of

> termination, exceeds the resale value at new Bid Rates. If there is no resale, damages due shall be determined by subtracting the value established by said appraisal from the difference between Current Contract Value and Effective Purchaser Credit.

D. App. 26.

14. After Gateway's contract terminated, the Forest Service appraised the remaining timber included in the Sale. D. App. 27-29.

15. On August 13, 1986, the contracting officer issued a final decision assessing damages against Gateway in the amount of $896,907.01. D. App. 30-32.

16. Thereafter, Gateway commenced this action pursuant to the Contract Disputes Act, 41 U.S.C. § 601 et seq., challenging the contracting officer's final decision.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed at Olympia, Washington, on this 20TH day of December 2005.

Christine Anderson

CHRISTINE ANDERSON

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| GATEWAY LUMBER CO., et al. | ) | |
| (Gateway Lumber Co.), | ) | |
| | ) | |
| Plaintiffs, | ) | Consolidated under lead case |
| | ) | No. 87-435C |
| v. | ) | (No. 87-435C) |
| | ) | (Judge Bruggink) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT
IN GATEWAY LUMBER CO. v. UNITED STATES, NO. 87-435C

Pursuant to Rule 56(h)(1), the United States respectfully submits the following proposed findings of uncontroverted fact in support of its accompanying motion for partial summary judgment.

1. On February 12, 1979, the Forest Service, United States Department of Agriculture ("Forest Service"), advertised for sale certain timber located in the Mt. Baker-Snoqualmie National Forest in Washington State. The sale was named the "Eldred Creek Sale." D. App. 1; Declaration of Christine Anderson ("Anderson Decl.) ¶ 1.[1]

2. On the same date, the Forest Service issued a "Timber Sale Prospectus" for the Eldred Creek Sale, containing information for prospective bidders concerning the timber and the terms and conditions of its sale. D. App. 2-9. According to the volume estimate set forth in the prospectus (and in the timber sale contract), the Sale included an estimated 5,200 MBF[2] of

[1] "D. App. __" refers to the cited page(s) in the appendix accompanying our motion.

[2] "MBF" is a unit of measurement meaning "thousand board feet." Thus, 1 MBF equals (continued...)

merchantable timber located in two clearcutting units. The total estimated volume included the following species and estimated volumes: 3,700 MBF of Western Hemlock and Other Coniferous Species ("H&O"); 1,300 MBF of Cedar ("C"); and 200 MBF of Douglas Fir ("DF"). The Sale also included an additional volume of utility pulp and special cull material located throughout 109 acres of the sale area that was subject to per-acre pricing ("PAM"). D. App. 3. As further indicated in the prospectus, the Sale called for the construction and reconstruction of approximately 2.2 miles of specified roads. D. App. 6. The prospectus stated that the contract termination date was to be March 31, 1983. D. App. 4. Anderson Decl. ¶ 2.

3. The total advertised value of the Eldred Creek Sale, established by a Forest Service appraisal, was $853,940. D. App. 10; Anderson Decl. ¶ 3.

4. The Forest Service conducted bidding for the Sale on March 14, 1979. Gateway Lumber Company ("Gateway") was the high bidder, among eight, with a total bid value of $1,434,216. D. App. 11; Anderson Decl. ¶ 4.

5. On November 19, 1979, the Forest Service awarded Gateway the Eldred Creek Timber Sale Contract. Under the terms of the contract, Gateway was obligated to cut, remove, and pay for all of the timber included in the Sale by the contract termination date, March 31, 1983. However, the contract did not require Gateway to complete the specified roads because Gateway, as a qualified small business enterprise, elected to have the Forest Service (through a contractor) perform that task. D. App. 12-14; Anderson Decl. ¶ 5.

---

[2](...continued)
one thousand board feet of timber.

6. Thereafter, by letter dated May 3, 1982, the Forest Service, pursuant to Standard Provision B8.21, granted Gateway a contract term adjustment that changed the termination date to June 12, 1983. D. App. 15-16; Anderson Decl. ¶ 6.

7. One year later, on May 20, 1983, the Forest Service, pursuant to Standard Provision B8.21, granted Gateway a second contract term adjustment that changed the termination date to August 17, 1983. D. App. 17; Anderson Decl. ¶ 7.

8. On August 16, 1983, the parties executed an agreement to extend the contract termination date by thirty days, to September 17, 1983, to allow Gateway time to decide whether to accept a further extension available under a then-recent Forest Service policy. D. App. 18; Anderson Decl. ¶ 8.[3]

9. Gateway decided to accept the extension. On September 20, 1983, the parties executed an agreement to extend and modify Gateway's contract. The agreement, among other things, extended the contract termination date by twenty-three months, to August 17, 1985. D. App. 19-22; Anderson Decl. ¶ 9.

10. The parties later agreed to conditionally extend the termination date beyond August 17, 1985, until a date thirty days after dissolution of a district court injunction issued in North

---

[3] Applicable regulations in effect during the relevant period authorized the Forest Service to grant extra-contractual extensions of timber sale contracts upon a finding that the substantial overriding public interest justified the extension. See 36 C.F.R. § 223.8(f)(2) (1983). Under this authority, the Chief of the Forest Service, during the early 1980s, adopted the SOFT I and SOFT II policies allowing contract extensions due to the then-depressed markets for forest products. The SOFT II policy authorized extensions of up to two years for sales sold before January 1, 1981, with termination dates prior to April 1, 1985. Gateway's Eldred Creek Sale qualified for an extension under this policy.

Side Lumber Co. v. Block, No. 83-490 (D. Or.).[4] D. App. 23; Anderson Decl. ¶ 10.

11. Gateway's Eldred Creek contract ultimately expired on December 29, 1985, thirty days after dissolution of the North Side injunction. By letter of April 18, 1986, the contracting officer notified Gateway that the contract had expired uncompleted and that the Forest Service had decided not to resell the sale. D. App. 24. The contracting officer's notice to Gateway that the Forest Service had decided against a resale was based upon an April 9, 1986 memorandum to the Forest Supervisor, Mt. Baker-Snoqualmie National Forest, from the Forest Service Regional Office. D. App. 25; Anderson Decl. ¶ 11.

12. At the time the contract terminated, Gateway had removed no timber from the two clearcutting units included in the sale. During October and November 1983, however, Gateway did remove a total of 147 MBF of right-of-way volume. This included 33.21 MBF of Cedar; 3.28 MBF of Douglas Fir; and 111.15 MBF of Hemlock and other coniferous species. Anderson Decl. ¶ 12.

---

[4] In 1983, North Side Lumber Company and other timber companies commenced a class action in the United States District Court for the District of Oregon, seeking injunctive relief and a judgment declaring that their contracts to purchase timber in National Forests were void and unenforceable. Gateway was a member of the class. The district court issued a preliminary injunction restraining the United States from enforcing the contracts. North Side Lumber Co. v. Block, No. 83-490 slip op. (D. Or. Feb. 15, 1984). The United States appealed. On February 20, 1985, the Ninth Circuit reversed the district court and vacated the injunction, holding that the district court lacked jurisdiction over the timber companies' contract claims. North Side Lumber v. Block, 753 F.2d 1482 (9th Cir. 1985). However, the Ninth Circuit stayed issuance of its mandate so that the timber companies could petition for certiorari. The Supreme Court denied certiorari on October 21, 1985. North Side Lumber Co. v. Block, 474 U.S. 931 (1985). After that, the Ninth Circuit, on November 28, 1985, issued its mandate in North Side. See Hampton Tree Farms, Inc. v. Yeutter, 956 F.2d 869, 870 (9th Cir.) (discussing history of the North Side litigation and holding timber buyers cannot rely on voided injunction), cert. denied, 506 U.S. 816 (1992).

13. The Eldred Creek Timber Sale contract contains Standard Provision B9.4 which provides in pertinent part:

> B9.4 Failure to Cut. In the event of (a) termination for breach or (b) Purchaser's failure to cut designated timber on portions of the Sale Area by Termination date, Forest Service shall appraise remaining Included Timber, unless termination is under B8.22. Such appraisal shall be made with the standard Forest Service method in use at time of termination.
>
> Damages due the United States for Purchaser's failure to cut and remove such timber meeting Utilization Standards shall be the amount by which the Current Contract Value[,] plus the cost of resale, less any effective Purchaser Credit remaining at time of termination, exceeds the resale value at new Bid Rates. If there is no resale, damages due shall be determined by subtracting the value established by said appraisal from the difference between Current Contract Value and Effective Purchaser Credit.

D. App. 26; Anderson Decl. ¶ 13.

14. After Gateway's contract terminated, the Forest Service appraised the remaining timber included in the Sale. D. App. 27-29; Anderson Decl. ¶ 14.

15. On August 13, 1986, the contracting officer issued a final decision assessing damages against Gateway in the amount of $896,907.01. D. App. 30-32; Anderson Decl. ¶ 15.[5]

16. Thereafter, Gateway commenced this action pursuant to the Contract Disputes Act, 41 U.S.C. § 601 et seq., challenging the contracting officer's final decision.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

---

[5] In a June 22, 2004 Order in Mt. Adams Veneer Co. v. United States, No. 91-984C, this Court concluded that a trial was necessary to resolve factual issues surrounding the contracting officer's determination of damages in a no-resale context. Accordingly, our accompanying motion in this no-resale case seeks summary judgment as to liability only.

J. CHRISTOPHER KOHN
Director

s/John W. Showalter
JOHN W. SHOWALTER
Assistant Director

s/Richard P. Nockett
RICHARD P. NOCKETT
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W. (8th Floor)
Washington, D.C. 20530
Tele: (202) 307-1134
Fax: (202) 307-0494

Attorneys for Defendant

Dated: December 22, 2005

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this __23d__ day of December 2005 I caused copies of the foregoing "DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT IN GATEWAY LUMBER CO. v. UNITED STATES, No. 87-435C" to be served upon the following individuals by United States mail (first-class, postage prepaid):

DENNIS J. DUNPHY, Esq.
Schwabe, Williamson & Wyatt
1420 Fifth Avenue, Suite 3010
Seattle, Washington 98101-2393

________________________________