IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| GATEWAY LUMBER CO., et al. (Gateway Lumber Co.), | ) | |
| Plaintiffs, | ) | Consolidated under lead case No. 87-435C |
| v. | ) | (No. 87-435C) (Judge Bruggink) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT
IN GATEWAY LUMBER CO. v. UNITED STATES, NO. 87-435C

Pursuant to Rule 56(h)(1), the United States respectfully submits the following proposed findings of uncontroverted fact in support of its accompanying motion for partial summary judgment.

1. On February 12, 1979, the Forest Service, United States Department of Agriculture ("Forest Service"), advertised for sale certain timber located in the Mt. Baker-Snoqualmie National Forest in Washington State. The sale was named the "Eldred Creek Sale." D. App. 1; Declaration of Christine Anderson ("Anderson Decl.) ¶ 1.[1]

2. On the same date, the Forest Service issued a "Timber Sale Prospectus" for the Eldred Creek Sale, containing information for prospective bidders concerning the timber and the terms and conditions of its sale. D. App. 2-9. According to the volume estimate set forth in the prospectus (and in the timber sale contract), the Sale included an estimated 5,200 MBF[2] of

[1] "D. App. __" refers to the cited page(s) in the appendix accompanying our motion.

[2] "MBF" is a unit of measurement meaning "thousand board feet." Thus, 1 MBF equals (continued...)

merchantable timber located in two clearcutting units. The total estimated volume included the following species and estimated volumes: 3,700 MBF of Western Hemlock and Other Coniferous Species ("H&O"); 1,300 MBF of Cedar ("C"); and 200 MBF of Douglas Fir ("DF"). The Sale also included an additional volume of utility pulp and special cull material located throughout 109 acres of the sale area that was subject to per-acre pricing ("PAM"). D. App. 3. As further indicated in the prospectus, the Sale called for the construction and reconstruction of approximately 2.2 miles of specified roads. D. App. 6. The prospectus stated that the contract termination date was to be March 31, 1983. D. App. 4. Anderson Decl. ¶ 2.

3. The total advertised value of the Eldred Creek Sale, established by a Forest Service appraisal, was $853,940. D. App. 10; Anderson Decl. ¶ 3.

4. The Forest Service conducted bidding for the Sale on March 14, 1979. Gateway Lumber Company ("Gateway") was the high bidder, among eight, with a total bid value of $1,434,216. D. App. 11; Anderson Decl. ¶ 4.

5. On November 19, 1979, the Forest Service awarded Gateway the Eldred Creek Timber Sale Contract. Under the terms of the contract, Gateway was obligated to cut, remove, and pay for all of the timber included in the Sale by the contract termination date, March 31, 1983. However, the contract did not require Gateway to complete the specified roads because Gateway, as a qualified small business enterprise, elected to have the Forest Service (through a contractor) perform that task. D. App. 12-14; Anderson Decl. ¶ 5.

---

[2](...continued)
one thousand board feet of timber.

6. Thereafter, by letter dated May 3, 1982, the Forest Service, pursuant to Standard Provision B8.21, granted Gateway a contract term adjustment that changed the termination date to June 12, 1983. D. App. 15-16; Anderson Decl. ¶ 6.

7. One year later, on May 20, 1983, the Forest Service, pursuant to Standard Provision B8.21, granted Gateway a second contract term adjustment that changed the termination date to August 17, 1983. D. App. 17; Anderson Decl. ¶ 7.

8. On August 16, 1983, the parties executed an agreement to extend the contract termination date by thirty days, to September 17, 1983, to allow Gateway time to decide whether to accept a further extension available under a then-recent Forest Service policy. D. App. 18; Anderson Decl. ¶ 8.[3]

9. Gateway decided to accept the extension. On September 20, 1983, the parties executed an agreement to extend and modify Gateway's contract. The agreement, among other things, extended the contract termination date by twenty-three months, to August 17, 1985. D. App. 19-22; Anderson Decl. ¶ 9.

10. The parties later agreed to conditionally extend the termination date beyond August 17, 1985, until a date thirty days after dissolution of a district court injunction issued in North

---

[3] Applicable regulations in effect during the relevant period authorized the Forest Service to grant extra-contractual extensions of timber sale contracts upon a finding that the substantial overriding public interest justified the extension. See 36 C.F.R. § 223.8(f)(2) (1983). Under this authority, the Chief of the Forest Service, during the early 1980s, adopted the SOFT I and SOFT II policies allowing contract extensions due to the then-depressed markets for forest products. The SOFT II policy authorized extensions of up to two years for sales sold before January 1, 1981, with termination dates prior to April 1, 1985. Gateway's Eldred Creek Sale qualified for an extension under this policy.

Side Lumber Co. v. Block, No. 83-490 (D. Or.).[4] D. App. 23; Anderson Decl. ¶ 10.

11. Gateway's Eldred Creek contract ultimately expired on December 29, 1985, thirty days after dissolution of the North Side injunction. By letter of April 18, 1986, the contracting officer notified Gateway that the contract had expired uncompleted and that the Forest Service had decided not to resell the sale. D. App. 24. The contracting officer's notice to Gateway that the Forest Service had decided against a resale was based upon an April 9, 1986 memorandum to the Forest Supervisor, Mt. Baker-Snoqualmie National Forest, from the Forest Service Regional Office. D. App. 25; Anderson Decl. ¶ 11.

12. At the time the contract terminated, Gateway had removed no timber from the two clearcutting units included in the sale. During October and November 1983, however, Gateway did remove a total of 147 MBF of right-of-way volume. This included 33.21 MBF of Cedar; 3.28 MBF of Douglas Fir; and 111.15 MBF of Hemlock and other coniferous species. Anderson Decl. ¶ 12.

---

[4] In 1983, North Side Lumber Company and other timber companies commenced a class action in the United States District Court for the District of Oregon, seeking injunctive relief and a judgment declaring that their contracts to purchase timber in National Forests were void and unenforceable. Gateway was a member of the class. The district court issued a preliminary injunction restraining the United States from enforcing the contracts. North Side Lumber Co. v. Block, No. 83-490 slip op. (D. Or. Feb. 15, 1984). The United States appealed. On February 20, 1985, the Ninth Circuit reversed the district court and vacated the injunction, holding that the district court lacked jurisdiction over the timber companies' contract claims. North Side Lumber v. Block, 753 F.2d 1482 (9th Cir. 1985). However, the Ninth Circuit stayed issuance of its mandate so that the timber companies could petition for certiorari. The Supreme Court denied certiorari on October 21, 1985. North Side Lumber Co. v. Block, 474 U.S. 931 (1985). After that, the Ninth Circuit, on November 28, 1985, issued its mandate in North Side. See Hampton Tree Farms, Inc. v. Yeutter, 956 F.2d 869, 870 (9th Cir.) (discussing history of the North Side litigation and holding timber buyers cannot rely on voided injunction), cert. denied, 506 U.S. 816 (1992).

13. The Eldred Creek Timber Sale contract contains Standard Provision B9.4 which provides in pertinent part:

> B9.4 Failure to Cut. In the event of (a) termination for breach or (b) Purchaser's failure to cut designated timber on portions of the Sale Area by Termination date, Forest Service shall appraise remaining Included Timber, unless termination is under B8.22. Such appraisal shall be made with the standard Forest Service method in use at time of termination.
>
> Damages due the United States for Purchaser's failure to cut and remove such timber meeting Utilization Standards shall be the amount by which the Current Contract Value[,] plus the cost of resale, less any effective Purchaser Credit remaining at time of termination, exceeds the resale value at new Bid Rates. If there is no resale, damages due shall be determined by subtracting the value established by said appraisal from the difference between Current Contract Value and Effective Purchaser Credit.

D. App. 26; Anderson Decl. ¶ 13.

14. After Gateway's contract terminated, the Forest Service appraised the remaining timber included in the Sale. D. App. 27-29; Anderson Decl. ¶ 14.

15. On August 13, 1986, the contracting officer issued a final decision assessing damages against Gateway in the amount of $896,907.01. D. App. 30-32; Anderson Decl. ¶ 15.[5]

16. Thereafter, Gateway commenced this action pursuant to the Contract Disputes Act, 41 U.S.C. § 601 et seq., challenging the contracting officer's final decision.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

---

[5] In a June 22, 2004 Order in Mt. Adams Veneer Co. v. United States, No. 91-984C, this Court concluded that a trial was necessary to resolve factual issues surrounding the contracting officer's determination of damages in a no-resale context. Accordingly, our accompanying motion in this no-resale case seeks summary judgment as to liability only.

J. CHRISTOPHER KOHN
Director

s/John W. Showalter
JOHN W. SHOWALTER
Assistant Director

s/Richard P. Nockett
RICHARD P. NOCKETT
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W. (8th Floor)
Washington, D.C. 20530
Tele: (202) 307-1134
Fax: (202) 307-0494

Attorneys for Defendant

Dated: December 22, 2005

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this __23d__ day of December 2005 I caused copies of the foregoing "DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT IN GATEWAY LUMBER CO. v. UNITED STATES, No. 87-435C" to be served upon the following individuals by United States mail (first-class, postage prepaid):

DENNIS J. DUNPHY, Esq.
Schwabe, Williamson & Wyatt
1420 Fifth Avenue, Suite 3010
Seattle, Washington 98101-2393

______________________________