IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| GATEWAY LUMBER CO., et al. (Gateway Lumber Co.), | ) | |
| Plaintiffs, | ) | Consolidated under lead case No. 87-435C (No. 87-435C) (Judge Bruggink) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DECLARATION OF CHRISTINE ANDERSON
IN GATEWAY LUMBER CO. v. UNITED STATES, NO. 87-435C

I, Christine Anderson, am a Contract Administration Forester in the Forest Service Regional Headquarters Office for the Pacific Northwest Region. I have been a contracting officer on the Olympic National Forest since 1985 and a contracting officer on the Mt. Baker-Snoqualmie National Forest since 1993. My responsibilities include the determination of damages in these consolidated cases and testifying, as needed, on behalf of the United States.

I make this Declaration for the purpose of establishing the amount of damages due to the United States as a result of the default of Gateway Lumber Company ("Gateway') on the Eldred Creek Timber Sale Contract.

I have reviewed the official Forest Service contract files and records pertaining to the Eldred Creek Sale. In making this Declaration, I have relied, among other things, upon the information contained in the Forest Service's records concerning the Eldred Creek Sale, as well as my knowledge and thirty years of experience as a Forest Service contracting officer, appraiser, and pre-sale administrator. I have not only prepared appraisals, but also served as a reviewer of

appraisals prepared by other Forest Service personnel to ensure that they complied with the standard Forest Service appraisal method. My appraisal experience includes assisting ranger districts with the appraisal of timber on defaulted sales and reviewing such appraisals, including the appraisals of sales such as the Eldred Creek Sale, which were not resold following the purchaser's default.

1. Gateway's Eldred Creek Contract terminated uncompleted on August 17, 1985. The Contract contained Standard Provision B9.4 which provides the formula for determining the damages, if any, due the United States in the event of a purchaser's default. Standard Provision B9.4 provides in pertinent part:

> B9.4 Failure to Cut. In the event of (a) termination for breach or (b) Purchaser's failure to cut designated timber on portions of the Sale Area by Termination date, Forest Service shall appraise remaining Included Timber, unless termination is under B8.22. Such appraisal shall be made with the standard Forest Service method in use at time of termination.
>
> Damages due the United States for Purchaser's failure to cut and remove such timber meeting Utilization Standards shall be the amount by which the Current Contract Value[,] plus the cost of resale, less any effective Purchaser Credit remaining at time of termination, exceeds the resale value at new Bid Rates. If there is no resale, damages due shall be determined by subtracting the value established by said appraisal from the difference between Current Contract Value and Effective Purchaser Credit.

D. App. 1.[1]

2. After Gateway's default, the Forest Service chose not to resell the remaining timber included in the Sale. During the relevant period, when there was no resale, the standard Forest

[1] "D. App. ___" refers to the cited page(s) in the appendix to our accompanying motion for default judgment.

Service method for estimating the value of the uncut timber at the time of termination was a two-step process. The first step involved the determination of appraised rates, also known as "advertised rates," through the application of the Forest Service's residual value appraisal method. These rates are the product of a standardized computer program that the Forest Service developed for appraisal purposes. The program was designed to store the data needed to appraise timber as of a specified date. In general, the residual value appraisal method begins with the selling value of the end products that could be produced from the timber included in a particular sale, and then subtracts production costs, such as logging, hauling, and manufacturing costs, etc, as well as profit, to arrive at the estimated value (the residual value) of the standing timber included in the sale. The residual value appraisal methodology uses historical cost data and price data to estimate the value of the timber to an operator of average efficiency, not the value to a particular purchaser or high bidder.

3. Using the residual value method, the appraised value of the remaining timber included in Gateway's Eldred Creek Sale equaled $461,013.25 at the time of contract termination (August 17, 1985). As set forth in the Forest Service "APPRAISAL SUMMARY" (D. App. 2), dated June 24, 1986, the appraised value was determined as follows:

| Species | Volume (MBF[2]) | Appraised Rates | Total |
|---|---|---|---|
| C[3] | 1,267 | $177.13 | $224,423.71 |
| DF[4] | 197 | 201.61 | 39,717.17 |
| H&O[5] | 3,589 | 52.73 | 189,247.97 |
| PAM[6] | 392 | 19.45 | 7,624.40 |
| | | Total Value at Termination: | $461,013.25 |

After reviewing the pertinent files and records, it is my opinion that the appraised rates set forth in the APPRAISAL SUMMARY (D. App. 2) were determined in accordance with the Forest Service's standard residual value method in use when Gateway's Eldred Creek Contract terminated uncompleted.

4. When there was to be no resale, the second step in the standard Forest Service appraisal method was to add, if appropriate, an estimated bid premium to the appraised rates produced by the residual value appraisal method described above. A bid premium – also known as an "overbid" – on a particular timber sale is the amount by which a purchaser's bid rate exceeds the advertised or appraised rate for a particular species. An estimated bid premium was added, where appropriate, to the appraised rates for biddable species only, not for species that were sold at a fixed, non-biddable rate. When there was no resale, the Forest Service generally added an estimated bid premium to the appraised rates (for biddable species) because the agency

---

[2] "MBF" is a unit of measurement meaning "thousand board feet." Thus, 1 MBF equals one thousand board feet of timber.

[3] "C" refers to the cedar included in the Sale.

[4] "DF" refers to the douglas fir included in the Sale.

[5] "H&O" refers to the western hemlock and other coniferous species included in the Sale.

[6] "PAM" refers to the per-acre material included in the Sale.

recognized that the rates established by its residual value appraisal methodology generally tended to be lower than actual bid or sales prices. The addition of an estimated bid premium to the appraised rates increased the total estimated value of the remaining timber and, thus, reduced the amount of damages that would otherwise be due under the damages formula prescribed by Standard Provision B9.4.

5. In this case, the contracting officer did add an estimated bid premium in determining the damages due as a result of Gateway's default. However, in doing so, the contracting officer failed to follow the standard Forest Service appraisal method. To correct this, I have redetermined the estimated bid premiums.

6. Two of the three species in Gateway's Elred Creek Sale were biddable: the cedar ("C") and the western hemlock and other coniferous species ("H&O"). To calculate estimated bid premiums for these species, I identified and used six sales that occurred on the Darrington Ranger District of the Mt. Baker-Snoqualmie National Forest within the twelve-month period preceding the default termination of Gateway's Eldred Creek Sale. The Darrington Ranger District now includes the area from the former Monte Cristo Ranger District in which Gateway's Eldred Creek Sale was located. These six sales were non-salvage sales that included the same species mix as the Eldred Creek Sale: DF, C, and H&O. Using the actual bid premiums for the C and the H&O on these six sales, I calculated a weighted average bid premium for each species. Adding these weighted average bid premiums to the appraised rates set forth in the appraisal summary (D. App. 2), I calculated the total value of Gateway's Eldred Creek Sale at the time of contract termination to be $477,989.15. I calculated the total value as follows:

| Species | Volume | Appraised Rates | Bid Premium | Adjusted Rate | Total |
|---|---|---|---|---|---|
| C | 1,267 | $177.13 | $6.94 | $184.07 | $233,216.69 |
| DF | 197 | 201.61 | n/a | 201.61 | 39,717.17 |
| H&O | 3,589 | 52.73 | 2.28 | 55.01 | 197,430.89 |
| PAM | 392 | 19.45 | n/a | 19.45 | 7,624.40 |
| | | | | Total Value at Termination: | $477,989.15 |

7. Under Standard Provision B9.4, the damages (if any) are determined by subtracting the appraised value at termination from the difference between the Current Contract Value at termination and Effective Purchaser Credit. Gateway had no such credit on the Eldred Creek Sale. Current Contract Value is a mathematical computation. It is the sum of the products of the purchaser's contract rates and the estimated remaining volume by species. The contract rates at the time the Eldred Creek Sale terminated were Gateway's bid rates. The Current Contract Value of the Eldred Creek Sale at the time of termination equals $1,394,401.76, calculated as follows:

| Species | Volume | Contract Rate | Total |
|---|---|---|---|
| C | 1,267 | $410.00 | $519,470.00 |
| DF | 197 | 250.08 | 49,265.76 |
| H&O | 3,589 | 230.00 | 825,470.00 |
| PAM | 392 | 0.50 | 196.00 |
| | | Current Contract Value at Termination: | $1,394,401.76 |

8. Thus, under the damages formula prescribed by Standard Provision B9.4, the damages due the United States are as follows:

| | |
|---|---|
| Current Contract Value: | $1,394,401.76 |
| Less Purchaser Credit: | 0.00 |
| Subtotal: | $1,394,401.76 |
| Less Appraised Value: | 477,989.15 |
| Damages: | $916,412.61 |

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief. Executed at Olympia, Washington, on this 31 ST day of January 2007.

Christine Anderson

CHRISTINE ANDERSON